HARTFORD STEAM BOILER INSPECTION AND
INSURANCE COMPANY *v.* UNDERWRITERS
AT LLOYD'S AND COMPANIES
COLLECTIVE ET AL.
(SC 17024)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued March 22—officially released October 12, 2004

*Thomas E. Birsic*, pro hac vice, with whom were *Paul K. Stockman*, pro hac vice, and *Maurice T. Fitz-Maurice*, for the appellant-appellee (plaintiff).

*Linda L. Morkan*, with whom were *Clayton H. Farnham*, pro hac vice, and, on the brief, *Patrick J. Sweeney*, for the appellees-appellants (defendants).

*Opinion*

ZARELLA, J. The determinative issue in this appeal is whether the judgment of the trial court directing a rehearing by the arbitration panel to clarify the award constitutes a final judgment or an otherwise appealable interlocutory order, thereby implicating our subject matter jurisdiction. We determine that the trial court's remand order does not constitute a final judgment or an appealable interlocutory order and, therefore, that we lack subject matter jurisdiction to review the merits of the claims of the plaintiff, Hartford Steam Boiler Inspection and Insurance Company (Hartford Steam Boiler), on its appeal and of the defendants, Underwriters at Lloyd's and Companies Collective et al.[1] (underwriters), in their cross appeal.

---

[1] In addition to Underwriters at Lloyd's and Companies Collective, the defendants include National Union Fire Insurance Company, International Fire Insurance Company, Aetna Casualty and Surety Company, Home Insurance Company and Zurich Insurance Company.

The following facts are relevant to this case. On August 11, 1993, a catastrophic explosion at an electrical generating facility near Newark, Arkansas, caused more than $28 million in damage. The owners of the facility, Arkansas Power and Light Company and others (collectively referred to as the insureds), submitted claims to two insurance providers, Hartford Steam Boiler, which provided boiler and machinery insurance, and the underwriters, which provided "all risks" property insurance. After investigating the losses, however, both providers denied coverage for the claims, determining that their respective policies did not cover such losses.

Thereafter, the insureds invoked the "Loss Adjustment Endorsements" provisions contained in both policies. These provisions enabled the insureds to recover the total losses caused by the explosion by collecting one half of the amount in dispute from each insurance company. As a result, Hartford Steam Boiler paid $10,933,435.86 to the insureds and the underwriters paid $11,880,525.33. The loss adjustment endorsements also contained a provision enabling Hartford Steam Boiler and the underwriters, after payment to the insureds, to submit any dispute as to respective liability to arbitration, which they did.

The initial arbitration, referred to by the parties as phase I, commenced in Memphis, Tennessee, in 1996, and was governed by procedures agreed to by Hartford Steam Boiler and the underwriters. On January 9, 1997, the arbitration panel issued an interim award and, thereafter, it issued a supplemental clarified decision in response to the parties' questions as to the meaning of the initial award. As a result of these decisions, Hartford Steam Boiler and the underwriters agreed that each of their policies covered a portion of the losses but they did not agree as to the apportionment of their respective liability.

Because of this disagreement as to the allocation of the losses, Hartford Steam Boiler and the underwriters resubmitted the matter to the arbitration panel, thereby commencing phase II of the arbitration. The parties stipulated to a statement of issues, which was limited to a determination of: "1. which costs are directly attributable to the collapse of the coutant support structure (i.e., the 'bottom' costs); 2. which costs are directly attributable to explosion and/or overpressurization associated with Unit Two (i.e., the 'top' costs); 3. which costs are directly attributable to fire, firefighting, or the explosion in D Mill; 4. which costs are common or general project costs that are not allocable into categories (a), (b) or (c); and 5. any costs whose purpose or allocation cannot be determined from available evidence, or that do not otherwise fall within categories (a), (b) or (c)." The statement of issues also called upon the panel to "resolve all liability and allocation issues with respect to each category of costs identified in Paragraph 1, including, without limitation, all coverage issues."[2] Hartford Steam Boiler and the underwriters also agreed to a revised set of general procedures that would govern phase II of the arbitration. Among these procedures, the parties agreed that "[t]he arbitration award shall be in writing and shall contain findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award."

After a hearing on the allocation issue in Windsor Locks, Connecticut, on June 28 and 29, 2001, the arbitration panel issued a decision on January 24, 2002, in which it responded to each question set forth in the parties' joint statement of issues. With respect to the first five issues, the panel presented dollar amounts reflecting the allocation of costs corresponding to each

---

[2] The statement of issues also set forth a procedural time line for the arbitration.

question.[3] The panel also determined that "[t]he allocation of $21,182,561.13 paid under the Joint Loss Agreement has been resolved in accordance with policy coverages as follows: Boiler & Machinery—$14,489,833.52; All Risk—$7,375,012.59; Total $21,864,846.11."

Subsequently, on February 22, 2002, Hartford Steam Boiler moved to vacate the award, and the underwriters moved to confirm the award or, alternatively, to remand the case to the panel for clarification. After a hearing on May 22, 2002, the trial court found in favor of the underwriters and remanded the case to the arbitration panel for a rehearing to clarify the award, so that the arbitrators' decision would include findings of fact and interpretations of the policies, as required by the governing procedures.

Hartford Steam Boiler appealed from the judgment of the trial court and the underwriters cross appealed.[4] We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We will set forth additional facts as necessary.

[3] The panel determined the costs as follows:

| "[1.] | $8,131,139.62 | |
|---|---|---|
| "[2.] | $7,563,239.90 | |
| "[3.] | $948,102.27 | Agreed property loss for [the underwriters] (D Mill $95,829.14 not included) |
| | $1,012.80 | Agreed Boiler loss |
| "[4.] | $11,539,066.54 | |
| "[5.] | None | |
| | "$28,182,561.13 | Total without D Mill" |

[4] In its cross appeal, the underwriters seek confirmation of the arbitrators' award, claiming that the trial court improperly determined that Hartford Steam Boiler did not waive its right to contest the sufficiency of the arbitrators' award. Specifically, the underwriters contend that Hartford Steam Boiler's statement at the arbitration hearing that it sought a decision reflecting merely "a statement that someone pays someone and how much they pay," constituted a waiver of Hartford Steam Boiler's right to challenge the award on any basis other than the dollar amount allocated to each party.

Hartford Steam Boiler claims that the trial court improperly remanded the award to the panel after the expiration of the applicable time period set forth in General Statutes § 52-418 (b),[5] and relies on our holdings in *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 588 A.2d 138 (1991), and *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 591 A.2d 101 (1991), to support this proposition. In addition, Hartford Steam Boiler claims that we have subject matter jurisdiction to review the merits of this case pursuant to General Statutes § 52-423[6] because the trial court, in relying on § 52-418 (b), "necessarily vacated the underlying award, in the course of directing a rehearing before the arbitrators." Hartford Steam Boiler further argues that we have jurisdiction over this matter under our holding in *State* v. *Curcio*, 191 Conn. 27, 30–31, 463 A.2d 566 (1983), and that its claim is appealable because "if the Superior Court's order remanding the case is read not to embody an implicit vacatur, then it is clear that the court exceeded its statutory authority under [§] 52-418 (b)'s express terms (which of course require vacatur as a condition precedent to remand)." Hartford Steam Boiler also contends that § 52-418 (b) represents the sole means by which a court may remand an arbitration award for a rehearing.

The underwriters claim that the trial court's order remanding the award to the arbitration panel for rehear-

[5] General Statutes § 52-418 (b) provides: "If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators. Notwithstanding the time within which the award is required to be rendered, if an award issued pursuant to a grievance taken under a collective bargaining agreement is vacated the court or judge shall direct a rehearing unless either party affirmatively pleads and the court or judge determines that there is no issue in dispute."

[6] General Statutes § 52-423 provides: "An appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions."

ing does not constitute an appealable final judgment or interlocutory order, and, therefore, that we lack jurisdiction to entertain Hartford Steam Boiler's appeal. Specifically, the underwriters urge that: "(1) the appeal is not authorized by [§] 52-423 which covers appeals from arbitration decisions; and (2) the Superior Court order from which [Hartford Steam Boiler] seeks relief has only returned the case to the arbitrators for additional information, and therefore is not yet appealable." They maintain that the language of § 52-423 does not include remands for rehearings within the class of appealable judgments, and that the remand does not qualify as an appealable interlocutory order pursuant to *State* v. *Curcio,* supra, 191 Conn. 27. We agree with the underwriters.

In order to determine whether we have jurisdiction to review the merits of this appeal, we first must ascertain whether the trial court rendered a final judgment or an otherwise appealable interlocutory order, or whether the court issued a nonappealable remand order. Thus, we must decide initially whether, in its memorandum of decision, the court intended to vacate the award and direct a rehearing pursuant to § 52-418 (b) or whether it intended to remand the arbitrators' award to the panel for clarification.

In its memorandum of decision, the trial court determined, and the parties do not dispute, that both the Federal Arbitration Act (arbitration act), 9 U.S.C. § 1 et seq., and § 52-418, applied, noting that "[t]he language is essentially the same, and the criteria applied to the application to vacate is the same [and provides that an award may be vacated] . . . 'if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.'" The court determined that the arbitrators' award failed to conform with the submission of the parties because the arbitrators

did not specify the factual basis for the award.[7] The court stated: "There are no supporting facts or allocation of liability or the reasons for the numbers that have been awarded as well as to which party liability should attach for each of these figures. . . . The findings are not sufficiently specific or comprehensive to comply with the requirement that all liability and allocation issues and all coverage issues be resolved, nor do the findings contain sufficient findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award." The trial court also concluded that "these submissions were not unrestricted submissions because the arbitrators were required to follow [certain] aforementioned requirements."

Cognizant of the lengthy history of the arbitration proceedings between the parties, the trial court stated that it was "reluctant to vacate the award because that would mean starting over again, and the parties would lose all the work, effort, etc. that covered six years of this arbitration. In the interest of economy of the parties, the panel and judicial economy, it would appear that a remand to the arbitrators would be more practical and a better remedy than vacating the awards."

The court recognized that it "must have authority to [remand]," and, citing to § 52-418 (b), stated that "[t]he pertinent part of the applicable statute is: 'If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.' " The court then determined that "the award was rendered within the thirty day time limit." In addressing Hartford Steam Boiler's claim that "the time for making the award [had] expired because if the court [directed] a

---

[7] The trial court also determined that Hartford Steam Boiler had not waived its right to assert its claims.

rehearing or a remand to the arbitrators it would be doing so beyond the January 24, 2002 deadline," the court determined that "it would be impossible for the court to direct a rehearing by the arbitrators before the time for the award has expired. If the award were made on the [twenty-eighth] day from submission of briefs, then the court would have only two days in which to make a decision for a remand assuming that the application to vacate could be filed and presented to a judge within the thirty day time limit. The law does not contemplate permitting something that is impossible to perform. . . . Accordingly, the court finds that the time limit for making the award was fulfilled, but the time limit for the court to act was and is an impossibility, and therefore, not applicable." The court then "remand[ed the case] to the arbitration panel for a rehearing by the panel and/or for a clarification of its awards so that it [would comply] with the requirements of the submissions and so that there [would] be a sufficient finding of facts and interpretations of the policies so as to fully comply with the submissions."[8]

Although the trial court cited to § 52-418 (b), which requires a vacatur as a condition precedent for a rehearing within the necessary time period, we believe that the trial court's memorandum of decision makes clear that the court intended only to remand the award to the panel for clarification, and did not intend to vacate the award. We need not discuss the legal basis for the remand because we conclude that the court had the legal authority to remand without vacating the arbitration decision under the arbitration act.

---

[8] The court also ordered the parties "for the benefit of the panel, to submit written interrogatories to the panel so that if answered, the parties will be satisfied that there are sufficient findings of fact and interpretations of the policies. The parties are further ordered to submit to the panel, for its benefit, proposed findings of facts and interpretations of policies. . . . Upon the rehearing and submission of the interrogatories and proposed findings, the panel is ordered to clarify its decisions as stated above . . . ."

The United States Supreme Court expressly has held that Congress "intended [the arbitration act] to apply in state and federal courts," pursuant to the exercise of its commerce clause powers. *Southland Corp.* v. *Keating*, 465 U.S. 1, 15, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984); accord *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 271–72, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 702, 846 A.2d 862 (2004) (discussing applicability of arbitration act to states as set forth in United States Supreme Court precedent). Thus, where parties have entered into "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction"; 9 U.S.C. § 2; the arbitration act applies. See *Southland Corp.* v. *Keating*, supra, 14; *Hottle* v. *BDO Seidman, LLP*, supra, 702.

In its memorandum of decision, the trial court expressly determined that the arbitration act applies to the present matter. Hartford Steam Boiler effectively has conceded that the arbitration act applies in this case by noting in its reply brief that "[t]he provision in the [arbitration act] authorizing a remand; 9 U.S.C. § 10 (b); is virtually identical to [§] 52-418 (b)." Thus, Hartford Steam Boiler does not challenge the trial court's finding that the arbitration act applies, but argues instead that "both under Connecticut *and federal law*, a court reviewing an arbitration award may only remand a matter to the arbitrators when the time for rendering the award . . . has not expired." (Emphasis added.) We also note that the contract between the parties, which authorizes the parties to institute arbitration proceedings in the event of a dispute, arises from a transaction involving commerce. Thus, we determine that the arbitration act applies to the present matter. We now turn to an examination of relevant federal precedent.

Federal courts consistently have acknowledged that "[a]s a general rule, once an arbitration panel renders a decision regarding the issues submitted, it becomes functus officio[9] and lacks any power to reexamine that decision."[10] *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.*, 943 F.2d 327, 331 (3d Cir. 1991); accord *Legion Ins. Co.* v. *VCW, Inc.*, 198 F.3d 718, 719 (8th Cir. 1999) ("[t]he doctrine of functus officio prevents arbitrators from revisiting a final award after the final award has been issued"); *Hyle* v. *Doctor's Associates, Inc.*, 198 F.3d 368, 370 (2d Cir. 1999). Courts also have recognized, however, that the doctrine has limitations and contains three exceptions that allow an arbitrator's review of a final award.[11] *Sterling China Co.* v. *Glass Workers Local No. 24*, 357 F.3d 546, 554 (6th Cir. 2004); accord *Green* v. *Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000); *Office & Professional Employees International Union, Local No. 471* v. *Brownsville General Hospital*, 186 F.3d 326, 331 (3d Cir. 1999); *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997). The three

---

[9] "Functus officio" has been defined as "having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force of authority." (Internal quotation marks omitted.) *Sterling China Co.* v. *Glass Workers Local No. 24*, 357 F.3d 546, 553 (6th Cir. 2004), quoting *Green* v. *Ameritech Corp.*, 200 F.3d 967, 976 (6th Cir. 2000). As one court has observed: "The policy which lies behind this [doctrine] is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion." (Internal quotation marks omitted.) *Green* v. *Ameritech Corp.*, supra, 976–77, quoting *La Vale Plaza, Inc.* v. *R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967).

[10] We note that "[d]espite certain distinctions between common law and statutory arbitrations . . . the functus officio doctrine has been routinely applied in federal cases brought pursuant to the [arbitration act], 9 U.S.C. § 1 et seq." (Citation omitted.) *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.*, 943 F.2d 327, 331 (3d Cir. 1991).

[11] The doctrine of functus officio serves as a default rule, and it applies only in the absence of an agreement between the parties to the contrary. *Hyle* v. *Doctor's Associates, Inc.*, supra, 198 F.3d 370.

exceptions to the rule of functus officio include: "(1) [where] an arbitrator can correct a mistake which is apparent on the face of his award"; (internal quotation marks omitted) *Office & Professional Employees International Union, Local No. 471* v. *Brownsville General Hospital,* supra, 331; such as "clerical mistakes or obvious errors in arithmetic computation"; *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.,* supra, 332; "(2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) [w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." (Internal quotation marks omitted.) *Office & Professional Employees International Union, Local No. 471* v. *Brownsville General Hospital,* supra, 331.

With these exceptions in mind, federal precedent also informs us that a court may remand without vacating a case to an arbitrator for clarification of a final award, pursuant to the arbitration act. "It is generally recognized that there are circumstances, albeit limited, under which a district court can remand a case to the arbitrators for clarification." *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.,* supra, 943 F.2d 333. "[M]any appellate courts have stated that an arbitration award under the [arbitration act] may be remanded for clarification if the award is ambiguous or incomplete"; *Lanier* v. *Old Republic Ins. Co.,* 936 F. Sup. 839, 845 (M.D. Ala. 1996); and it is clear that "the functus officio doctrine does not preclude a motion for remand for clarification under the [arbitration act]." Id., 848; see *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.,* supra, 333–34 ("[a]lthough there is no explicit provision in the [arbitration act] for such a remand, courts have uniformly stated that a remand to the arbitration panel is appro-

priate in cases where the award is ambiguous"); see also *M & C Corp.* v. *Erwin Behr GMBH & Co.*, 326 F.3d 772, 782 (6th Cir. 2003) (" '[a] remand is proper, both at common law and under the federal law of arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award' ").

Moreover, we note that when a court remands an arbitration award for clarification, "[t]he resolution of such an ambiguity is not within the policy which forbids an arbitrator to redetermine an issue which he has already decided, for there is no opportunity for redetermination on the merits of what has already been decided." *La Vale Plaza, Inc.* v. *R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967). On remand, "the arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear and redetermine those matters not in question." *Paperhandlers Union No. 1, International Printing Pressmen & Assistants Union, AFL-CIO* v. *U.S. Trucking Corp.*, 441 F. Sup. 469, 474 (S.D.N.Y. 1977). In such a circumstance, "the arbitrators will act only to remove the cloud of doubt . . . and will in no way reopen the merits of the controversy." *La Vale Plaza, Inc.* v. *R.S. Noonan, Inc.*, supra, 573. Thus, "[b]ecause of the limited purpose of such a remand, which serves the practical need for the . . . court to ascertain the intention of the arbitrators so that the award can be enforced, there is not even a theoretical inconsistency with the functus officio doctrine." *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.*, supra, 943 F.2d 334.[12]

---

[12] Although courts have recognized that "remand for clarification is a disfavored procedure . . . [w]hen possible . . . a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." (Internal quotation marks omitted.) *Tri-State Business Machines* v. *Lanier Worldwide*, 221 F.3d 1015, 1017 (7th Cir. 2000), quoting *Teamsters Local No. 579* v. *B & M Transit, Inc.*, 882 F.2d 274, 278 (7th Cir. 1989). "[I]f an award is unclear, it should be sent back to the arbitrator for clarification." (Internal quotation marks omitted.) *Tri-State Business*

Bearing in mind these principles, we believe that the rationale employed by the United States Court of Appeals for the Sixth Circuit in *Green* v. *Ameritech Corp.*, supra, 200 F.3d 976–78, and the United States Court of Appeals for the Ninth Circuit in *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, supra, 109 F.3d 1411, are particularly instructive in the matter before us. In *Green*, the defendant employers challenged the judgment of the District Court, vacating an arbitration award in favor of the defendants and remanding the case to a new arbitrator. *Green* v. *Ameritech Corp.*, supra, 969. The underlying matter that led to arbitration involved a claim by the plaintiff, a former employee named Daniel Green, and other former employees,[13] that the defendants had engaged in race and age discrimination and retaliation in violation of state antidiscrimination laws.[14] Id. Prior to trial, the parties had agreed to submit the matter to arbitration, which proceeded pursuant to the following relevant terms of the arbitration agreement: "The arbitrator's award shall be accompanied by an opinion which explains the arbitrator's decision with respect to each theory advanced by each [p]laintiff and the arbitrator's calculation of the types of damages, if any, awarded to each [p]laintiff. . . . Any challenge to the award shall be made only for the reasons enumerated in section 10 of the [arbitration act] . . . 9 U.S.C. § 10 . . . . This Agreement is made pursuant to and is governed by the [arbitration act], 9 U.S.C. § 1 et seq." (Internal quotation marks omitted.) Id., 970.

In his decision in favor of the defendants, the arbitrator found that "[c]onsidering all the evidence, the [a]rbi-

*Machines* v. *Lanier Worldwide*, supra, 1017, quoting *Flender Corp.* v. *Techna-Quip Co.*, 953 F.2d 273, 279–80 (7th Cir. 1992).

[13] After the arbitration commenced, all of the former employees, except Green, settled their claims. *Green* v. *Ameritech Corp.*, supra, 200 F.3d 970.

[14] Although the case had originated in state court, the defendants removed the case to federal court. *Green* v. *Ameritech Corp.*, supra, 200 F.3d 970.

trator finds that [the plaintiff] has not met his burden of proof that the decision to terminate his employment . . . constituted age discrimination in violation [of the] Elliott-Larsen Civil Rights Act." (Internal quotation marks omitted.) Id., 971. The arbitrator employed identical language in determining that the plaintiff had failed to meet his burden of proof with respect to his race discrimination claim. Id. In resolving the retaliation allegation, the arbitrator found that "[c]onsidering all the evidence, the [a]rbitrator finds that [the plaintiff] has not met his burden of proving, in accordance with the standards set under the Elliott-Larsen Civil Rights Act, that retaliation for protected activity was a factor which made a difference in the decision to terminate his employment . . . . The [a]rbitrator finds no evidence to support the [p]laintiff's position that retaliation was, in any way, a factor in the [plaintiff's] termination." (Internal quotation marks omitted.) Id.

Thereafter, the plaintiff filed an appeal in the District Court, asking the court to vacate the award pursuant to the arbitration act, 9 U.S.C. § 10 (a) (3) and (4). Id. Among his claims, the plaintiff contended that the arbitrator had violated the terms of the arbitration agreement by failing to explain the decision with respect to each of the plaintiff's theories. Id., 972. Finding that the arbitrator had "exceeded his authority by failing to explain his decision," the District Court vacated the award and remanded it to a new arbitrator. Id. In its memorandum of decision, the District Court reasoned that "[h]ere, the arbitrator did not *explain* his decision with respect to each one of [the] plaintiff's theories, as the term explain is commonly understood. Rather, the arbitrator merely *announced* his decision with respect to each one of [the] plaintiff's theories. The arbitrator's opinion is totally conclusory and insufficient according to the terms of the Arbitration Agreement." (Emphasis in original; internal quotation

marks omitted.) Id. The court rejected the defendants' suggestion that it should remand the case to the arbitrator for clarification of his award, concluding that the award was not ambiguous. Id.

On appeal to the Sixth Circuit, the defendants claimed, among other things, that the District Court improperly had refused to remand the case to the arbitrator for supplementation and clarification instead of vacating the award. Id., 976. In addressing this claim, the Court of Appeals noted that "[i]n its analysis, the district court misconstrued the governing law. The district court believed that remand to [the original arbitrator] was not an option; it stated that '[r]emand is available when an arbitration award is "ambiguous." ' . . . Finding that [the arbitrator's] award was not ambiguous, the district court concluded that it could not remand for an explanation. As both parties noted in their briefs, the district court must have based its conclusion that it lacked the authority to remand to the original arbitrator on the doctrine of functus officio." Id.

After explicating the functus officio doctrine, its underlying policies and three recognized exceptions, the Court of Appeals propounded that " '[a] remand is proper, both at common law and under the federal law of labor arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award.' " Id., 977, quoting *Industrial Mutual Assn., Inc.* v. *Amalgamated Workers, Local No. 383*, 725 F.2d 406, 412 n.3 (6th Cir. 1984). The court determined that "[i]n the instant case, the district court concluded, incorrectly in our view, that [the arbitrator] breached the arbitration agreement because he failed fully to execute his obligation to explain his award, and it refused to remand. Courts usually remand to the original arbitrator for clarification of an ambiguous award when the award fails to address a contingency that later arises or when

the award is susceptible to more than one interpretation. . . . While a failure fully to explain an award does not leave such an interpretive gap, we believe that it would nevertheless authorize a remand based on this third exception to the functus officio doctrine. *The purpose of this exception is to permit the arbitrator to complete an assigned task, and in this case the district court adjudged the arbitrator's task incompletely executed.*" (Citations omitted; emphasis added.) *Green* v. *Ameritech Corp.*, supra, 200 F.3d 977. The Court of Appeals further determined that "[r]emanding to [the original arbitrator] under these circumstances would not implicate any of the concerns underlying the functus officio doctrine, as he would simply be completing his duties by clarifying his reasoning, not reopening the merits of the case." Id., 977–78. Thus, even "if the district court were correct in its conclusion that [the arbitrator] failed to explain his award [within the terms of the arbitration agreement], *the proper remedy would have been a remand to the same arbitrator for clarification.*" (Emphasis added.) Id., 978.

We find equally persuasive the Ninth Circuit's determination in *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, supra, 109 F.3d 1410. In that case, the defendant employer, Silver State Disposal Service, Inc., appealed from the judgment of the District Court, which had confirmed an amended arbitration award and rendered summary judgment in favor of the plaintiff union. Id. The defendant had discharged a member of the union, and the union filed a grievance on his behalf, claiming that the defendant had failed to comply with the terms of the collective bargaining agreement. Id. The parties submitted the grievance to arbitration, and the arbitrator determined that the defendant had discharged the employee without just cause. Id. The defendant reinstated the employee, but a dispute arose as to whether the arbitration award

entitled the employee to receive back pay. Id. Over the defendant's objection, the union requested that the arbitrator clarify its decision. Id. In a letter to the parties, the arbitrator acknowledged that "my award was not clear in regard to the reinstatement of [the grievant]. . . . In my award, I intended for [the grievant] to receive back pay from the date of termination until the date of reinstatement except for the period of the three day suspension." Id. The union petitioned the District Court to confirm the award as amended, and the defendant filed a counterclaim, seeking enforcement of the initial award. Id. After both parties filed motions for summary judgment, the District Court confirmed the amended award and rendered summary judgment in favor of the union. Id.

On appeal to the Ninth Circuit, the defendant claimed that it was entitled to judgment as a matter of law because the arbitrator lacked the authority to clarify the award, pursuant to the rule of functus officio. Id. The court disagreed and determined that the doctrine of functus officio did not preclude the amendment because the arbitrator's initial decision had not been complete. Id. The court noted that it previously had recognized that "an arbitrator can . . . complete an arbitration if the award is not complete," and stated further that "[t]he completion exception to the doctrine of functus officio applies when an arbitration award fails to resolve an issue . . . ." (Internal quotation marks omitted.) Id., 1411, quoting *McClatchy Newspapers* v. *Central Valley Typographical Union No. 46*, 868 F.2d 731, 734 n.1 (9th Cir. 1982). In the case before it, the Court of Appeals concluded that "the arbitrator's clarification was permissible because it completed the award. The arbitrator explained that she had intended to award back pay, but had failed to address the issue." *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, supra, 109 F.3d 1411. Moreover,

the court noted that the defendant "offered no evidence to refute the arbitrator's explanation of her state of mind at the time she executed the initial award." Id. The Court of Appeals concluded, therefore, that "[t]he district court did not err in affirming the arbitrator's amended award because it is clear that the arbitrator's award was incomplete." Id., 1412.

In the present case, as in *Green*, we believe that the trial court had the authority to remand the case pursuant to the arbitration act and federal precedent, without offending principles of functus officio. We also conclude, pursuant to *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, supra, 109 F.3d 1410, that the arbitration panel may, on remand, complete what we believe constitutes an incomplete award.[15] As the trial court found in the present matter, the arbitration panel's only task on remand is to clarify the factual basis for its allocation of the sums representing each party's liability; there is no question pertaining to Hartford Steam Boiler's and the underwriters' respective liability and the sums to be paid under the award because the arbitrators already have determined the dollar amounts representing the parties' respective liability. Because the "third exception to the functus offi-

---

[15] Hartford Steam Boiler claims that the Ninth Circuit's decision in *Western Employers Ins. Co.* v. *Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992), should control. We conclude, however, that *Green* and *International Brotherhood of Teamsters* are more persuasive. In distinguishing *Western Employers Ins. Co.*, wherein the Ninth Circuit vacated an arbitration award when the arbitrators had failed to include requisite findings of fact and conclusions of law, the *Green* court found significant that "the arbitration panel in *Western Employers [Ins. Co.]* actually *refused* to make the requisite findings and conclusions, instead questioning whether they were bound by the parties' agreement . . . ." (Emphasis in original.) *Green* v. *Ameritech Corp.* supra, 200 F.3d 975. In the present matter, unlike in *Western Employers Ins. Co.*, there is no evidence of wilfulness on behalf of the arbitration panel to ignore or otherwise subvert the terms of arbitration agreement, and we therefore reject Hartford Steam Boiler's reliance on *Western Employers Ins. Co.*

cio doctrine . . . permit[s] the arbitrator to complete an assigned task"; *Green* v. *Ameritech Corp.*, supra, 200 F.3d 977; we believe that this exception, as well as federal precedent permitting a court to direct a clarifying remand, enabled the trial court to order a rehearing for clarification purposes without vacating the award.[16]

We note, moreover, that our determination that the trial court had the authority to remand this matter to the panel is consistent with, and furthers, the federal and state policies favoring arbitration as a means for expedient resolution of disputes. *M & C Corp.* v. *Erwin Behr GMBH & Co.*, supra, 326 F.3d 782; *Bell* v. *Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[t]here is a strong federal policy favoring arbitration as an alternative means of dispute resolution"); *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 777, 830 A.2d 729 (2003) (" '[b]ecause we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution' "). "By its very purpose, arbitration is designed to result in a speedy and final resolution of controversies"; *Thompson* v. *Tega-Rand International*, 740 F.2d 762, 764 (9th Cir. 1984) (per

---

[16] Hartford Steam Boiler claims that federal cases permitting the District Court to remand an award to the arbitrator are inapposite in the present matter because the cases do not "consider the temporal limitation on the court's authority to remand set out in 9 U.S.C. § 10 (b)," which provides that "[i]f an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators." 9 U.S.C. § 10 (b) (formerly codified at 9 U.S.C. § 10 [a] [5]). We note that our determination that the trial court remanded but did not vacate the award renders inapplicable any time limitation contained in § 10 (b). See *Hoffman* v. *Cargill, Inc.*, 59 F. Sup. 2d 861, 874 n.7 (N.D. Iowa 1999) (noting that 9 U.S.C. § 10 [a] [5], now codified at 9 U.S.C. § 10 [b], "will become pertinent here only if this court vacates the arbitration award in question here"), rev'd on other grounds, 236 F.3d 458 (8th Cir. 2001).

curiam); *Diapulse Corp. of America* v. *Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980) ("[t]he purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes"); and, with this principle in mind, we are reluctant to erase the work surrounding this belabored arbitration proceeding, causing further delay, more time, and more resources to be expended, when a deficiency may be corrected by a simple clarification from the panel. Cf. *Iowa Mold Tooling Co.* v. *Teamsters Local Union No. 828*, 847 F. Sup. 125, 128 (S.D. Iowa 1993) ("[c]ourts are reluctant to reverse arbitration awards").

In addition, our conclusion likewise ensures that "private agreements to arbitrate are enforced according to their terms." (Internal quotation marks omitted.) *Doctor's Associates, Inc.* v. *Casarotto*, 517 U.S. 681, 688, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996), quoting *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). By allowing the arbitration panel to clarify its decision and to complete its assigned task, both Hartford Steam Boiler and the underwriters will receive an arbitration award in accordance with the terms agreed to in their governing procedures.

Having determined that the trial court had the authority to remand the case to the arbitration panel, we turn to the issue of whether Hartford Steam Boiler may appeal the remand order at this time. At the outset we note that "[t]he [arbitration act] has not been held to supersede state procedural laws"; (internal quotation marks omitted) *Hottle* v. *BDO Seidman, LLP*, supra, 268 Conn. 697–98 n.5, quoting *Hottle* v. *BDO Seidman, LLP*, 74 Conn. App. 271, 274 n.4, 811 A.2d 745 (2002); and, therefore, we apply Connecticut law to determine whether we have jurisdiction to review the claims presented in this appeal. Hartford Steam Boiler claims that

the judgment of the trial court was a final judgment for the purposes of appeal, pursuant to § 52-423 and *State* v. *Curcio*, supra, 191 Conn. 27.[17] We do not agree.

Our law relating to final judgments and interlocutory orders is well established. We previously have noted that "[t]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 733, 818 A.2d 731 (2003), quoting *State* v. *Curcio*, supra, 191 Conn. 30–31. Moreover, "[t]he statutory right to appeal is limited to appeals by aggrieved parties from final judgments"; (internal quotation marks omitted) *Rivera* v. *Veterans Memorial Medical Center*, supra, 733, quoting *State* v. *Curcio*, supra, 30; and we have observed that "[l]imiting appeals to judgments that are final serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings." (Internal quotation marks omitted.) *Lisee* v. *Commission on Human Rights & Opportunities*, 258 Conn. 529, 541, 782 A.2d 670 (2001), quoting *Madigan* v. *Madigan*, 224 Conn. 749, 752–53, 620 A.2d 1276 (1993). "Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 733–34, quoting *State* v. *Curcio*, supra, 30–31.

---

[17] We previously have applied both § 52-423 and the *Curcio* test in the context of arbitration appeals. See *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 766, 774, 613 A.2d 1320 (1992); *Daginella* v. *Foremost Ins. Co.*, 197 Conn. 26, 30, 495 A.2d 709 (1985); see also *Travelers Ins. Co.* v. *General Electric Co.*, 230 Conn. 106, 644 A.2d 346 (1994) (applying *Curcio* factors and holding that trial court's denial of stay pursuant to General Statutes § 52-409 was not appealable order).

Hartford Steam Boiler's assertion that § 52-423 provides us with jurisdiction to review its claims is premised upon its argument that the trial court vacated the award. Because we have determined that the trial court did not vacate the award, or otherwise confirm, modify or correct it, the judgment does not constitute an appealable final judgment pursuant to the statute.

The failure of the judgment to fall within the terms of § 52-423, however, does not end our inquiry. "In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 734, quoting *State* v. *Curcio*, supra, 191 Conn. 30–31. "The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding." (Internal quotation marks omitted.) *Burger & Burger, Inc.* v. *Murren*, 202 Conn. 660, 664, 522 A.2d 812 (1987), quoting *State* v. *Parker*, 194 Conn. 650, 654, 485 A.2d 139 (1984). "If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy" the first prong of *Curcio*. *State* v. *Parker*, supra, 653. Similarly, "[a] judgment by a trial court ordering further administrative proceedings cannot meet the first prong of the *Curcio* test, because, whatever its merits, the trial court's order has not terminate[d] a separate and distinct proceeding." (Internal quotation marks omitted.) *Doe* v. *Connecticut Bar Examining Committee*, 263 Conn. 39, 46, 818 A.2d 14

(2003), quoting *Schieffelin & Co.* v. *Dept. of Liquor Control*, 202 Conn. 405, 409–10, 521 A.2d 566 (1987).

The trial court's remand for a rehearing to clarify the panel's allocation award does not satisfy the first prong of the *Curcio* test. The very essence of the trial court's order seeking clarification of the award "so that the court will know exactly what it is being asked to enforce"; *Ottley* v. *Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987); is indicative of the ongoing and unfinished nature of the process leading to a final judgment by the court.

Turning to the second prong of the *Curcio* test, we have recognized that it "focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 734. "An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." (Internal quotation marks omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 247, 811 A.2d 1272 (2002), quoting *Daginella* v. *Foremost Ins. Co.*, 197 Conn. 26, 31, 495 A.2d 709 (1985). "Unless the appeal is authorized under the *Curcio* criteria, absence of a final judgment is a jurisdictional defect that [necessarily] results in a dismissal of the appeal." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 734, quoting *State* v. *Malcolm*, 257 Conn. 653, 667, 778 A.2d 134 (2001).

The trial court's remand similarly does not satisfy *Curcio*'s second prong because the order does not implicate any statutory or constitutional right. After the

trial court's review of the arbitration panel's clarifying decision, wherein it will confirm, modify, vacate or correct the award, both Hartford Steam Boiler and the underwriters will be free to appeal any adverse final decision by the court.

With respect to the underwriters' cross appeal; see footnote 4 of this opinion; we note that the arbitrator did not, as the trial court found, fully comply with that portion of the submission requiring "findings of fact and conclusions regarding the interpretation of the insurance policies that are the subject of this arbitration as necessary to support the award." Because we have determined that the trial court did not confirm, vacate, correct or modify the award, pursuant to § 52-423, we lack jurisdiction to review this claim under the statute. Similarly, in applying the *Curcio* factors, we conclude that the trial court's order neither terminated a separate and distinct proceeding nor threatened the preservation of a right that "will be irretrievably lost and the [party] irreparably harmed unless they may immediately appeal." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, supra, 262 Conn. 734. Accordingly, we are precluded from reviewing the underwriters' claim at this time.

Because we conclude that the trial court's order for a rehearing to clarify the arbitrators' allocation award does not constitute a final judgment, and does not satisfy either prong of the *Curcio* test, we lack subject matter jurisdiction to review the merits of this case.

The appeal is dismissed.

In this opinion the other justices concurred.