## COLDWELL BANKER MANNING REALTY, INC. *v.* COMPUTER SCIENCES CORPORATION
### (SC 18223)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 16—officially released October 6, 2009

*Gwendolyn S. Bishop*, with whom were *P. Timothy Smith* and, on the brief, *Paul W. Smith*, for the appellant (plaintiff).

*David M. Bizar*, with whom were *Charles D. Ray* and, on the brief, *Matthew A. Weiner*, for the appellee (defendant).

*Opinion*

ZARELLA, J. This is the second of two appeals brought by the plaintiff, Coldwell Banker Manning Realty, Inc. (Coldwell Banker), in connection with a real estate transaction involving Coldwell Banker, the defendant, Computer Sciences Corporation (CSC), and Cushman and Wakefield of Connecticut, Inc. (Cushman).[1] In the present appeal, Coldwell Banker claims that the trial court improperly concluded that the decision of the Greater Hartford Association of Realtors, Inc.[2] (association), to dismiss as untimely Coldwell Banker's request for arbitration of its claims against CSC constituted an arbitration award for purposes of General Statutes § 52-417,[3] and, as a result, the court improperly confirmed the alleged award. Coldwell Banker further contends that the trial court improperly (1) granted CSC's motion to stay pending arbitration, thus compelling Coldwell Banker to arbitrate with a third party who was not a signatory to any contract or a member of any association to which Coldwell Banker also belonged that required arbitration, (2) determined that a contract existed between Coldwell Banker and the association when there was no admission by the parties that there was such a contract and no evidence

---

[1] Our decision in the first appeal, released on the same date as this decision, is *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 980 A.2d 819 (2009).

[2] The Greater Hartford Association of Realtors, Inc., is a voluntary professional association of licensed real estate agents and brokers serving the greater Hartford area.

[3] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

presented to support that fact, and (3) determined that CSC was entitled to enforce the arbitration provisions of the association's bylaws and code of ethics as a third party beneficiary. CSC responds that the trial court properly determined that the association's dismissal of the arbitration request as untimely constituted an award subject to confirmation by the trial court and, therefore, that the court lacked subject matter jurisdiction to consider Coldwell Banker's claims against CSC. CSC also argues that the trial court properly stayed Coldwell Banker's claims pending arbitration because (1) Coldwell Banker's agreement to arbitrate contractual disputes with its clients pursuant to the association's bylaws and code of ethics is enforceable, (2) CSC was an intended third party beneficiary of the arbitration agreement, and (3) an intended third party beneficiary of an arbitration agreement may enforce a promise to arbitrate. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal and are set forth in *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 980 A.2d 819 (2009). "On March 15, 2000, Coldwell Banker entered into a contract with CSC to serve as its exclusive realtor and to assist in the purchase, lease or exchange of certain real property in East Hartford known as Riverview Square. After CSC viewed the property, it directed Coldwell Banker to proceed with negotiations to lease space at the location. On the basis of its contract with CSC and CSC's interest in the property, Coldwell Banker entered into discussions with the property owner, who expressed a willingness to lease a substantial amount of space to CSC and to pay Coldwell Banker a commission in accordance with its contract with CSC.

"Thereafter, CSC contacted Coldwell Banker and requested a meeting to discuss the contract. The meet-

ing was held on April 13, 2000, and also was attended by Cushman's agents, [Joel M.] Grieco and [Robert E.] Kelly. At the meeting, Grieco and Kelly represented to Coldwell Banker that Cushman had a simultaneous contract with CSC as its sole and exclusive real estate broker and, therefore, that Cushman would be entitled to the commission on any transaction involving Riverview Square that Coldwell Banker might be in the process of negotiating. As a result of the meeting, CSC requested and obtained a new contract pursuant to which the three parties agreed that CSC would be allowed to select either Coldwell Banker or Cushman to represent it in the Riverview Square transaction, with the company selected receiving 80 percent of the commission and the other company receiving 20 percent. CSC selected Cushman, and Cushman allegedly received a commission of approximately $500,000 following completion of the transaction, none of which it shared with Coldwell Banker.

"On April 26, 2002, Coldwell Banker filed a complaint against Cushman, Grieco and Kelly. Coldwell Banker asserted six claims against each defendant, including fraud, violation of a statutory duty, breach of the duty to deal in good faith, interference with contract, breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The claims were based on allegations that Cushman, CSC, Grieco and Kelly knowingly had made false representations and statements to Coldwell Banker that CSC had a valid broker contract with Cushman during the time that CSC also had a contract with Coldwell Banker. Coldwell Banker further alleged that it had relied on these representations to its detriment in agreeing to release CSC from its contract and in allowing Cushman to receive the 80 percent commission to which Coldwell Banker was entitled.

"On August 14, 2002, [Cushman, Grieco and Kelly] filed a motion to dismiss the complaint for lack of subject matter jurisdiction, or, alternatively, to stay the proceedings pursuant to General Statutes § 52-409[4] pending arbitration of Coldwell Banker's claims. [Cushman, Grieco and Kelly] argued that all of the parties to the action were members of the association in good standing and that language in the arbitration agreement that the association had adopted compelled arbitration of Coldwell Banker's claims.[5]

"On October 15, 2002, the court, *Sheldon, J.*, granted in part the motion to dismiss and granted the motion to stay Coldwell Banker's 'entire action' pending arbitration of certain of its claims. The court determined that all parties were members of the association[6] and thus were required to arbitrate disputes arising out of their relationship as realtors. The court concluded, however, that only two of the six claims against Cushman were

[4] General Statutes § 52-409 provides: "If any action for legal or equitable relief or other proceeding is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration."

[5] "In their motion to dismiss or to stay the proceedings, [Cushman, Grieco and Kelly] referred to the following language that the association adopted from the code of ethics of the National Association of Realtors: 'In the event of contractual disputes between [realtors] (principals) associated with different firms, arising out of their relationship as [realtors], the [realtors] shall submit the dispute to arbitration in accordance with the regulations of their [b]oard or [b]oards, *rather than litigate the matter.*' " (Emphasis in original.) *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 587 n.6.

[6] "In an affidavit dated December 6, 2006, Jeffrey P. Arakelian, chief executive officer of the association, attested that Coldwell Banker, Cushman, Grieco and Kelly were realtors and members of the association in good standing." *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 588 n.7.

arbitrable under the association's bylaws and code of ethics, those being the breach of contract and fraud claims. The court also concluded that the claims against Grieco and Kelly were not arbitrable because, even though [Grieco and Kelly] were realtors, they were not parties to the contract between Coldwell Banker, Cushman and CSC. The court thus determined that it retained subject matter jurisdiction over all of the noncontract claims against Cushman and all of the claims against Grieco and Kelly.

"Coldwell Banker did not seek to arbitrate its claims against Cushman immediately but chose instead to commence an action against CSC on May 1, 2003, in which it asserted four of the six claims that it had asserted against Cushman, Grieco and Kelly.[7] On June 9, 2005, the court, *Booth, J.*, granted CSC's motion to stay Coldwell Banker's action against CSC pending arbitration of all claims against CSC.[8] On November 1, 2005, Coldwell Banker filed a request for arbitration of its claims against CSC, which the association forwarded to its grievance committee.[9] Coldwell Banker crossed out standard language in the request form certifying that

[7] "The complaint against CSC alleged fraud, breach of the duty to deal in good faith, breach of contract and violation of CUTPA." *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 588 n.9.

[8] "The Appellate Court subsequently granted CSC's motion to dismiss Coldwell Banker's appeal from the trial court's decision granting the motion to stay pending arbitration." *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 588 n.10.

[9] "Jeffrey P. Arakelian, chief executive officer of the association, attested in an affidavit that, '[i]n accordance with [§] 42 of the [c]ode of [e]thics and [a]rbitration [m]anual of the National Association of [Realtors] . . . when [the association] receives a request for arbitration, it must be forwarded to the [association's] [g]rievance [c]ommittee. The [g]rievance [c]ommittee has sole responsibility for determining whether . . . a matter is subject to arbitration, including, inter alia, whether it has been submitted within the required time frame and whether the issue relates to a real estate transaction and is properly arbitrable.' " *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 589 n.12.

the form had been filed 'within 180 days' of the closing of the disputed transaction.[10] In a letter dated November 16, 2005, the grievance committee dismissed Coldwell Banker's request for arbitration on the ground that the request had not been timely filed and refunded the $500 arbitration fee that it previously had paid. The grievance committee reasoned that a request for arbitration must be filed within '180 days after the closing of the transaction, if any, or within 180 days after the fact constituting the arbitration matter could have been known in the exercise of reasonable diligence, whichever is later.' The grievance committee also noted, however, that Coldwell Banker could appeal from the dismissal of the request for arbitration to the association's board of directors and provided a form for this purpose. Thereafter, Coldwell Banker appealed from the dismissal, but the appeal was denied without further comment.

"On December 8, 2005, more than three years after the trial court, *Sheldon, J.,* stayed Coldwell Banker's action against Cushman, Grieco and Kelly, Coldwell Banker filed a request for arbitration of the claims[11] in that action. Coldwell Banker attached to the request copies of the trial court's ruling and the original complaint naming Cushman, Grieco and Kelly as defen-

[10] "The request for arbitration provided in relevant part: 'Under the penalties of perjury, I declare that this application and the allegations contained herein are true and correct to the best of my knowledge and belief and this request for arbitration is filed within *180 days* after the closing of the transaction, if any, or within 180 days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later.' . . . Coldwell Banker crossed out the first reference to '180 days,' which we have emphasized in italics, but did not cross out the second reference to '180 days.' " (Emphasis in original.) *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 589 n.13.

[11] "As we noted previously, the trial court, *Sheldon, J.,* determined that two of Coldwell Banker's six claims against Cushman were subject to arbitration." *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 590 n.14.

dants. In a letter that accompanied the request, Coldwell Banker stated that '[t]he request to arbitrate is on limited matters as set forth in the court's ruling.' The letter also noted 'that the [trial] court ordered arbitration after the 180 day time limit had passed. This request for arbitration, therefore, has been filed after the 180 day time limit has passed. We have amended the request for arbitration to reflect this fact.' Coldwell Banker amended the form requesting the arbitration by crossing out language certifying that it had been filed 'within 180 days' of the closing of the transaction or of the date on which the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence.[12] On January 18, 2006, the grievance committee dismissed the arbitration request on the ground that it had been filed more than 180 days after the occurrence of the event that had created the dispute or after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence. The grievance committee also refunded the $500 arbitration fee and indicated, as it had done in dismissing the request for arbitration of the claims against CSC, that Coldwell Banker could appeal from the dismissal. Coldwell Banker, however, did not appeal from the dismissal.

"On August 2, 2006, the trial court, *Bryant, J.*, granted the joint motion filed by Cushman, Grieco, Kelly and CSC to consolidate the action against Cushman, Grieco and Kelly with the action against CSC. On December 1, 2006, Coldwell Banker filed motions to lift the stays imposed by the trial court in both actions. Cushman and CSC each filed an application to confirm the alleged

---

[12] "Coldwell Banker crossed out both references to '180 days' in the request for arbitration of the claims against Cushman. In its earlier request for arbitration of the claims against CSC, however, it crossed out only one reference to '180 days.'" *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 590 n.15; see footnote 10 of this opinion.

arbitration award in their respective cases, and Cushman, Grieco and Kelly filed a motion to dismiss the noncontract claims against Cushman and all of the claims against Grieco and Kelly, contending that the trial court lacked subject matter jurisdiction to hear the claims in light of the arbitration award and the fact that arbitration was the exclusive remedy for settling the parties' dispute. On April 19, 2007, the trial court, *Miller*, *J.*, granted the applications to confirm the awards and the motion by Cushman, Grieco and Kelly to dismiss the noncontract claims against Cushman and all of the claims against Grieco and Kelly. The court did not act on Coldwell Banker's motions to lift the stays.

"In its memorandum of decision, the trial court concluded that the grievance committee's dismissals of Coldwell Banker's requests for arbitration constituted arbitration awards within the meaning of § 52-417 because the dismissals conclusively determined the matters submitted for arbitration, leaving the arbitrator with nothing more to do. Moreover, Coldwell Banker had not contested the dismissals within thirty days. See General Statutes § 52-420 (b).[13] With respect to the scope of the awards and whether they applied to Grieco and Kelly, and to the noncontract claims in the action against Cushman, the trial court concluded that, by signing the form provided by the association for submitting the dispute to arbitration, Coldwell Banker had authorized the association to issue a binding determination on any contractual or specific noncontractual claims arising out of the transaction. The court further concluded that Coldwell Banker's requests for arbitration of the disputes with Cushman and CSC were unrestricted, there having been no express agreement limiting the scope of the submissions. Consequently,

---

[13] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

the trial court concluded that the grievance committee had the power to issue a decision to the full extent of its authority under the arbitration agreement. The trial court summed up its conclusion as follows: 'Ultimately, the grievance committee had the authority to issue a binding determination covering all of [Coldwell Banker's] claims against all defendants because all of [Coldwell Banker's] claims against them arose out of either their relationship to each other as realtors or through their tripartite contract to split the realtor commission at issue.' " *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 586–92. This appeal by Coldwell Banker from the trial court's judgment confirming the alleged award with respect to CSC followed.[14]

We begin with Coldwell Banker's claim that the trial court improperly concluded that the association's dismissal of Coldwell Banker's request for arbitration as untimely constituted an arbitration award for purposes of § 52-417 and that the court, therefore, improperly confirmed the alleged award. Coldwell Banker and CSC make all of the arguments made by the parties in *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 293 Conn. 582, in which the same issue was raised by Coldwell Banker and decided by this court. Id., 592–93. We see no reason to repeat in this case our comprehensive analysis of the issue in that case. Accordingly, for the reasons set forth in *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 582, we agree with Coldwell Banker that the grievance committee's dismissal of its request for arbitration of its claims

---

[14] Coldwell Banker appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Although Coldwell Banker's action against CSC was consolidated with the action against Cushman, Grieco and Kelly for trial, Coldwell Banker opted to take a separate appeal from the trial court's judgment in each case.

against CSC did not constitute an arbitration award. Because the trial court improperly treated it as such, its decision to confirm the alleged award was improper. Consequently, we need not reach any of Coldwell Banker's remaining claims concerning CSC's status as a party to the arbitration and the effect of the alleged arbitration award.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

KATZ, J., concurring in part and dissenting in part. For the reasons set forth in my concurring and dissenting opinion in *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, 293 Conn. 582, 612, 980 A.2d 819 (2009), also released today, I disagree with the majority's conclusion that the decision by the grievance committee (grievance committee) of the Greater Hartford Association of Realtors, Inc., dismissing the request for arbitration filed by the plaintiff, Coldwell Banker Manning Realty, Inc., did not constitute an award that conclusively disposed of the controversy between the parties. Specifically, I disagree that the parties' arbitration agreement and the committee's decision predicated on that agreement unambiguously reflect that the ground for the dismissal—that the request for arbitration was not filed within a specified 180 day time limit—was a discretionary decision that could not constitute an award, rather than a mandatory, jurisdiction time limit that would have constituted an award. I, therefore, would reverse the trial court's judgment in the present case and remand the case to that court with direction to remand the case to the committee for an articulation as to the basis for the committee's decision. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271

Conn. 474, 484–94, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005) (discussing case law supporting such authority and limitations on arbitral authority in such instances solely to clarify basis of decision and not to redetermine merits); see also *Phillips* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Docket No. 3:05cv1959, 2006 U.S. Dist. LEXIS 50952, *15–16 (D. Conn. July 26, 2006) (denying motion for confirmation of award that dismissed request for arbitration on ground that request was untimely and remanding case to arbitral authority to clarify basis of decision to indicate whether dismissal was dispositive of claims or permitted litigant to pursue claims in court). Consistent with my concurring and dissenting opinion in *Coldwell Banker Manning Realty, Inc.* v. *Cushman & Wakefield of Connecticut, Inc.*, supra, 612, I would reverse the trial court's decision and direct the trial court to remand the case to the committee for a clarification as to whether: (1) in the exercise of its discretion, the committee declined to refer the matter to arbitration because the request had been filed beyond the 180 day period; or (2) the committee was mandated under the agreement to dismiss the request because it has no jurisdiction over a request made beyond that 180 day period.[1]

Accordingly, I respectfully concur in part and dissent in part.

---

[1] I am mindful that, in the present case, the plaintiff has raised an additional issue that would need to be addressed if the committee were to indicate that the dismissal was mandatory and jurisdictional. Specifically, the plaintiff contends that the trial court improperly compelled the parties to proceed to arbitration because: (1) the defendant, Computer Sciences Corporation, was not a party to any contract with the plaintiff or a member of an association with the plaintiff requiring arbitration; and (2) even if there was such a contract between the plaintiff and the Greater Hartford Association of Realtors, Inc., the defendant is not entitled to enforce that contract as a third party beneficiary and is bound by the terms of the contract between it and the plaintiff, which does not require arbitration. Because the majority does not address these claims, and any need for their resolution hinges on the committee's articulation, I express no opinion on these issues.