## ALL SEASONS SERVICES, INC. *v.*
## GEORGE GUILDNER
## (AC 25849)

Schaller, McLachlan and Mihalakos, Js.

Argued September 14, 2005—officially released February 28, 2006

*George C. Springer, Jr.*, for the appellant (defendant).

*Charles I. Miller,* for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendant, George Guildner, doing business as G & N Foods, appeals from the judgment of the trial court granting an application to confirm an arbitration award in favor of the plaintiff, All Seasons Services, Inc. On appeal, the defendant claims that the court misinterpreted the language of the arbitration award. We hold that the court properly confirmed the award, but conclude that in doing so, the court improperly failed to consider the arbitrator's letter of clarification. We affirm the judgment of the trial court on alternate grounds.

The following facts are relevant to this opinion. The parties entered into an asset purchase agreement in which the plaintiff was to purchase certain assets of the defendant's vending and food service business for the total price of $700,000. The agreement provided that the plaintiff would pay $554,000 of the purchase price at the closing and would execute a promissory note for the remaining $146,000.

Pursuant to § 2 of the agreement, the promissory note would be subject to two postclosing adjustments.[1] After the sale was completed, a dispute arose between the parties as to the calculation of the postclosing adjustments.[2] The agreement contained an arbitration provision under which the parties agreed to submit all claims arising under the agreement to binding arbitration in Hartford in accordance with the commercial arbitration rules of the American Arbitration Association.[3] The parties submitted their dispute to arbitration in accordance with the agreement. On June 4, 2003, the arbitrator

---

[1] Postclosing adjustment I addressed the value of the inventory, cash and equipment transferred in the sale. The defendant represented to the plaintiff that the value of the inventory, cash and equipment was $84,000. Postclosing adjustment I required, inter alia, that the promissory note be decreased in the event that the actual value of the inventory, cash and equipment was less than $84,000.

Postclosing adjustment II corresponded to the defendant's projection of sales revenues that the plaintiff could expect to realize in the year following the agreement. The defendant represented that the business would likely achieve $1,207,209 in revenues in the year following the agreement. Postclosing adjustment II provided that the $146,000 promissory note would be reduced by an agreed on formula in the event that the defendant's estimate was overstated.

[2] The plaintiff claimed that it accidentally had paid an additional $24,876.32 to the defendant for the value of the inventory, cash and equipment, where that amount was already included in the value of the promissory note. Furthermore, the plaintiff demanded that the promissory note be adjusted downward on the basis of the overvaluation of the inventory, cash and equipment as well as the projected revenues for the year following the sale.

[3] Section 17.11 of the agreement provides: "Arbitration. Any disputes, disagreements or claims arising hereunder, or with respect to the interpretation of any provisions of this Agreement, with express exception of any claims of Buyer arising under § 10, shall be promptly referred to arbitration in Hartford, Connecticut in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Seller and Buyer agree that the arbitrator(s) in any arbitration conducted under this § 17.11 may not award, and neither Buyer nor Seller may claim, punitive or extra-contractual damages or attorneys' fees. The decision of the arbitrator(s) shall be a conclusive determination of the matter, shall be binding upon the parties, and shall be enforceable by application to the federal or state courts of Connecticut. Seller and Buyer each shall pay one-half of the arbitration and arbitrators' fees and all of the respective costs and expenses incurred in connection with the arbitration process."

issued his award.[4] Thereafter, the plaintiff sought payment from the defendant of $24,876.32 plus interest, the sum it believed it was owed under the award. The defendant objected to the plaintiff's interpretation of the award. He asserted that the award did not require him to pay $24,876.32 because that amount was discharged with the promissory note.[5] The plaintiff notified the arbitrator by a letter dated November 26, 2003, that the parties were in disagreement over the award and asked him to clarify its meaning. The arbitrator responded with a letter addressed to both parties' counsel, dated December 3, 2003, which stated: "The Award rendered on this matter speaks for itself. I assume you wish to avoid entering the Award as a judgment in court,

[4] The award stated in relevant part: "With respect to [the plaintiff's] first claim, the payment of $24,876.32 paid by [the plaintiff] to [the defendant] subsequent to postclosing I, I find such payment was made in error. Accordingly, I award the sum of . . . $24,876.32 to [the plaintiff], plus interest . . . .

"The postclosing I adjustment was determined to be $24,876.32. However, [the defendant] asserts that the value of excess equipment was properly excluded. . . . I find that the purchase agreement obligated [the plaintiff] to purchase the excess equipment; only the issue of its value was left to postclosing I. . . . I find the value of the excess equipment to be zero. However, I also find the failure of [the plaintiff] to take the excess equipment (i.e., to remove it from [the defendant's] warehouse) to be a breach of the agreement. I find the damages for such breach to be $3000. Nevertheless, I also find the damages to be part of the postclosing I adjustment, increasing the amount from $24,876.32 to $27,876.32. Accordingly, the installment note of $146,000 must be reduced by $56,123.68 as required by § 2 (b) of the agreement.

"The installment note must be further reduced by the postclosing II adjustment because net sales were less than 100 percent of the total projected sales as of the end of the first twelve months. . . . I find that the downward adjustment to the installment note required by postclosing II exceeded the face amount of the note. Accordingly, I award zero to [the defendant] with respect to the note and declare the note to be discharged in full."

[5] The defendant's attorney sent a letter dated July 28, 2003, to the plaintiff, which stated in relevant part: "Frankly, we do not understand the basis for your demand. As we read the decision, the arbitrator concluded that the value of the excess inventory was $24,876.32 and reduced the [moneys] owed to [the defendant] under the installment Note accordingly. . . . Please let us know the basis for your assertion that your client is owed $29,654.58."

and have requested written clarification of the Award. Paragraph one of the Award directs [the defendant] to pay to [the plaintiff] the sum of $24,876.32 plus interest. The penultimate paragraph of the Award directs [the defendant] to pay to [the plaintiff] the sum of $400 and to pay to the [American Arbitration] Association the sum of $700. The paragraphs between the first paragraph and the penultimate paragraph make no monetary award to either party; the note held by [the defendant] is found to be discharged and satisfied in full and [the plaintiff] is found to be entitled to no compensation for the equipment not owned by [the defendant]. I hope this letter will assist you in avoiding litigation in the enforcement of the Award."

Following the arbitrator's letter, the plaintiff again sought payment of the $24,876.32 from the defendant. The defendant objected to the arbitrator's authority to issue the letter and refused payment. On May 20, 2004, the plaintiff brought an action pursuant to General Statutes § 52-417 to confirm the arbitration award. The defendant filed a response to the application to confirm on June 24, 2004, arguing that the court should confirm his interpretation of the original award without regard to the arbitrator's subsequent letter.[6]

On August 5, 2004, the court issued a memorandum of decision confirming the arbitrator's award as interpreted by the plaintiff, requiring the defendant to pay $24,876.32 plus interest. The court based its decision on its determination that the defendant had failed to file any motion to vacate, modify or correct the award within thirty days pursuant to General Statutes § 52-420. In its opinion, the court noted that both parties had consented to the clarification letter.[7] The court later

[6] The defendant's response to the application to confirm stated that "the question is not whether the [a]ward should be confirmed, but what the award is that is, in fact, being confirmed."

[7] At oral argument before this court, the parties stipulated that this finding was incorrect.

permitted reargument on the basis of the defendant's claim that he had never consented to the clarification. Following reargument, on September 9, 2004, the court issued a modified order upholding its previous decision, but noting that any evidence concerning the clarification had been disregarded.[8] This appeal followed.

The defendant claims on appeal that the court misinterpreted the language of the arbitration award and thereby confirmed, essentially, the "wrong" award. The plaintiff contends that the court properly confirmed the award and that the arbitrator's letter of clarification substantiates the court's interpretation of the award. We agree with the plaintiff and hold that the court properly confirmed the award. We conclude, however, that the court improperly failed to consider the arbitrator's letter of clarification.

I

We first discuss the court's order confirming the award. The court granted the plaintiff's application to confirm the arbitration award on the basis of the defendant's failure to file a motion to vacate, modify or correct within thirty days pursuant to § 52-420 (b). General Statutes § 52-417 provides that when a party to an arbitration files a timely application for an order confirming an arbitration award, the court shall grant the order unless the award is vacated, modified or corrected.[9]

---

[8] The modified order stated: "The motion to reargue is granted. Having heard the arguments on the merits, the court leaves its decision intact. The court notes however [that] it has disregarded any evidence concerning the clarification."

[9] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

Section 52-420 (b) requires that a motion to vacate, modify or correct be filed within thirty days of the notice of the award to the moving party.[10]

We agree with the court that the plaintiff had filed a timely application to confirm the arbitration award and that, even construing the defendant's pleading entitled "Defendant's Response to Application to Confirm Arbitration Award" as a motion to vacate, modify or correct the award,[11] the defendant failed to file any such motion within thirty days as required by § 52-420 (b).[12] Because no motion to modify, vacate or correct was filed, the court was correct in concluding that the language of § 52-417 required it to confirm the award. We do not believe that § 52-417 fully resolves the issues on appeal, however, because the defendant does not contest the court's authority to confirm the award per se. He claims to object only to the court's interpretation of the language of the award confirmed. Accordingly, we address the defendant's argument in full.

## II

Before we address the defendant's claim that the court misconstrued the award, we are compelled to

[10] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[11] Compare *Wu* v. *Chang*, 264 Conn. 307, 309–10, 312, 823 A.2d 1197 (2003) (treating objection to confirmation of arbitration award as motion to vacate).

[12] The court's memorandum of decision suggests that the defendant could have filed a timely motion within thirty days of receiving notice of the arbitrator's letter of clarification. Our case law is unclear as to whether a letter of clarification would reinstate the thirty day limitation period for motions to modify, vacate or confirm. See *Wu* v. *Chang*, 264 Conn. 307, 312–13, 823 A.2d 1197 (2003); *Wolf* v. *Gould*, 10 Conn. App. 292, 300–301, 522 A.2d 1240 (1987); see also *Hyle* v. *Doctor's Associates, Inc.*, 198 F.3d 368, 371 n.1 (2d Cir. 1999). We need not resolve that issue, however, because the defendant's objection to the clarification was not made known to the court until he filed his response to the plaintiff's application to confirm more than six months after the letter of clarification was issued. We further note that the defendant's letter to the plaintiff objecting to the arbitrator's letter of clarification was not a motion to modify, vacate or correct because

confront what we believe is a superseding issue on appeal, namely, the propriety of the arbitrator's letter of clarification. Throughout the proceedings before the trial court, the defendant claimed that the arbitrator was without jurisdiction to clarify the award because the time period for rendering a final award had expired.[13] The court amended its order to exclude consideration of the clarification based on the defendant's arguments. The plaintiff claims that the court's disregard of the clarification was improper. We agree and conclude that the arbitrator was acting within his authority when he rendered the clarification.

The question of whether the arbitrator had the authority to issue a clarification of his final award, and thus, whether the court in confirming the award was bound to consider the clarification, is a matter of law that is subject to plenary review by this court. See *Carr* v. *Trotta*, 7 Conn. App. 272, 274–75, 508 A.2d 799, cert. denied, 200 Conn. 806, 512 A.2d 229 (1986). Although the parties based their arguments regarding that issue solely on state law, we conclude that the contract between the parties is one involving commerce[14] and,

it was never sent to either the trial court or to the arbitrator. See Practice Book § 11-2.

[13] General Statutes § 52-416 (a) provides in relevant part: "If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator . . . shall render the award within thirty days from the date the hearing or hearings are completed . . . . An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing."

[14] The Federal Arbitration Act (arbitration act), 9 U.S.C. § 1 et seq., applies in both state and federal courts when parties have entered into "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . ." 9 U.S.C. § 2; see also *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 483, 857 A.2d 893 (2004), cert denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005). "Section [one] of the [arbitration] act defines commerce to include commerce among the several States . . . . 9 U.S.C. § 1. The United States Supreme Court has construed § 1 broadly. The court has explained that involving commerce is

accordingly, look to federal precedent for guidance in our analysis.[15] Compare *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 484 & n.9, 857 A.2d 893 (2004) (when both federal and state law applied to arbitration

the equivalent of affecting commerce, and accordingly, the term signals an intent to exercise Congress' commerce power to the full. . . . *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)." (Internal quotation marks omitted.) *Hottle* v. *BDO Seidman, LLP*, 74 Conn. App. 271, 276, 811 A.2d 745 (2002), aff'd, 268 Conn. 694, 846 A.2d 864 (2004).

The arbitration agreement in this case arose out of a contract for the sale of the assets of a vending and food service business between the plaintiff, a Delaware corporation with a principal place of business in Massachusetts, and the defendant, a citizen of Connecticut. Accordingly, the contract was for a transaction involving interstate commerce under the arbitration act. See, e.g., *Creative Telecommunications, Inc.* v. *Breeden*, 120 F. Sup. 2d 1225, 1231 (D. Haw. 1999) (sale of assets agreement between Hawaii corporation and Nevada corporation, when assets remained in Hawaii, involved "commerce" as defined in 9 U.S.C. § 1).

[15] Under Connecticut law, an arbitrator's authority to clarify an award is unclear. Nevertheless, we feel inclined to make the following observation. General Statutes § 52-417, which sets forth the court's authority under Connecticut law when ruling on an application to confirm an arbitration award, provides, inter alia, that after a timely application to confirm an arbitral award, "[t]he court . . . *shall* grant such an order . . . unless the award is vacated, modified or corrected . . . ." (Emphasis added.) A strict reading of § 52-417 would suggest that a court is bound to confirm an award in all instances when there has been no motion to vacate, modify or correct. While we are cognizant of the language of § 52-417, we do not see how it could be interpreted to require a court to confirm an award that contains an ambiguity just because a proper motion was not made.

The federal courts consistently have upheld an arbitrator's authority to clarify an ambiguous award in cases controlled by the Federal Arbitration Act (arbitration act), 9 U.S.C. § 1 et seq., despite the absence of any such authority set forth in the arbitration act. See *Bell Aerospace Co. Division of Textron, Inc.* v. *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW)*, 500 F.2d 921, 924 (2d Cir. 1974); see also *Colonial Penn Ins. Co.* v. *Omaha Indemnity Co.*, 943 F.2d 327, 333–34 (3d Cir. 1991) ("[a]lthough there is no explicit provision in the [arbitration act] for such a remand, courts have uniformly stated that a remand to the arbitration panel is appropriate in cases where the award is ambiguous"). The language of the arbitration act, 9 U.S.C. § 9, and General Statutes § 52-417 is virtually identical. On the basis of that comparison, we conclude that a similar result may apply to arbitration awards governed solely by Connecticut law and do not think that permitting an arbitrator to clarify an ambiguity would be contrary to § 52-417.

clause, court looked to federal doctrine of functus offi-
cio to determine court's authority to remand award to
arbitrator for clarification), cert. denied, 544 U.S. 974,
125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005).

Federal courts consistently have applied the com-
mon-law doctrine of functus officio to arbitration
awards governed by the Federal Arbitration Act, 9
U.S.C. § 1 et seq. See, e.g., *Colonial Penn Ins. Co.* v.
*Omaha Indemnity Co.*, 943 F.2d 327, 331–33 (3d Cir.
1991). The doctrine provides that, as a general rule,
once an arbitrator has issued a final award, having ful-
filled his function, he is without authority to reexamine
it. See *Green* v. *Ameritech Corp.*, 200 F.3d 967, 977 (6th
Cir. 2000); *Hyle* v. *Doctor's Associates, Inc.*, 198 F.3d
368, 370 (2d Cir. 1999); *Colonial Penn Ins. Co.* v. *Omaha
Indemnity Co.*, supra, 331. The doctrine originated at
a time when judges were hostile to arbitration and dis-
trusted arbitrators' independence. See *Glass, Molders,
Pottery, Plastics & Allied Workers International Union*
v. *Excelsior Foundry Co.*, 56 F.3d 844, 846–47 (7th Cir.
1995); *La Vale Plaza, Inc.* v. *R.S. Noonan, Inc.*, 378
F.2d 569, 572 (3d Cir. 1967). Exceptions to the doctrine
of functus officio have developed over time as arbitra-
tion has become more favored as a means of efficient
dispute resolution. Federal precedent is now clear that
an arbitrator may revisit a final award "[w]here the
award, although seemingly complete, leaves doubt
whether the submission has been fully executed [such
that] an ambiguity arises which the arbitrator is entitled
to clarify." (Internal quotation marks omitted.) *Hart-
ford Steam Boiler Inspection & Ins. Co.* v. *Underwrit-
ers at Lloyd's & Cos. Collective*, supra, 271 Conn. 485.
In examining arbitration awards, courts have noted that
an award is ambiguous if it "is susceptible to more than
one interpretation." *Green* v. *Ameritech Corp.*, supra,
977; see also *International Brotherhood of Teamsters*

v. *Silver State Disposal Service, Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997).

The award at issue in the present case contained contradictory language about whether the defendant was required to pay the plaintiff $24,876.32 or whether the amount was discharged along with the promissory note. Because it did not indicate clearly what each party was required to do, the arbitrator was within his authority to issue a letter of clarification. Cf. *Barbier* v. *Shearson Lehman Hutton, Inc.*, 948 F.2d 117 (2d Cir. 1991).[16] The arbitrator's judgment that a clarification was warranted is to be given deference by the court. See *Teamsters Local 312* v. *Matlack, Inc.*, 118 F.3d 985, 994 (3d Cir. 1997) ("[t]hat the arbitrator chose to use such a procedure to protect the integrity of the arbitration process should not be subject to judicial second guessing" [internal quotation marks omitted]). "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . [E]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Internal quotation marks omitted.) *Board of Education* v. *Civil Service Employees Affiliates, Local 760*, 88 Conn. App. 559, 566–67, 870 A.2d 473 (2005).

Contrary to the defendant's contention, the arbitrator's letter did not modify any substantive content of the original award, but merely explained its meaning. "[An arbitrator's] resolution of such an ambiguity is not within the policy which forbids an arbitrator to redetermine an issue which he has already decided,

---

[16] We see nothing in the rules of the American Arbitration Association that prohibits an arbitrator from issuing a clarification in this instance.

for there is no opportunity for redetermination on the merits of what has already been decided. . . . In such a circumstance, the [arbitrator] will act only to remove the cloud of doubt . . . and will in no way reopen the merits of the controversy." (Citations omitted; internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 486. The clarification by the arbitrator in the present case served the practical purpose of resolving the parties' conflict without the need for additional litigation. Furthermore, case law is clear that when an exception to the doctrine of functus officio applies, an arbitrator may revisit an award even over the objection of one of the parties. *La Vale Plaza, Inc.* v. *R.S. Noonan, Inc.*, supra, 378 F.2d 573. Courts have noted, in fact, that "[t]o hold that a joint request is required before an arbitrator may clarify or complete an award would empower a party that would benefit from an error to prevent its correction." *International Brotherhood of Teamsters* v. *Silver State Disposal Service, Inc.*, supra, 109 F.3d 1412. Indeed, permitting an arbitrator to issue a clarification unilaterally is consistent with the purpose of arbitration to serve as an efficient and cost effective means of dispute resolution. The court's decision to disregard the clarification in response to the defendant's claim that he never consented to it, therefore, was improper.

## III

In light of our analysis in part II, we address the defendant's claim that the court misinterpreted the language of the original award when it granted the application to confirm. We hold that the court did not misconstrue the award.

The standard of review applied to the construction of an arbitration award is the same as that applied to the construction of a judgment. See *Phoenix Windows*,

*Inc.* v. *Viking Construction, Inc.*, 88 Conn. App. 74, 77, 868 A.2d 102, cert. denied, 273 Conn. 932, 873 A.2d 1001 (2005). The construction of an arbitration award, therefore, is a question of law subject to plenary review. Id.

The defendant's argument that the court misconstrued the award implies that an ambiguity existed in the award's language that needed to be resolved. The defendant asks this court to resolve that ambiguity in his favor, yet he misses the crucial point that a court does not have the authority either to enforce an ambiguous award; see *Americas Ins. Co.* v. *Seagull Compania Naviera, S.A.*, 774 F.2d 64, 67 (2d Cir. 1985) ("[a]lthough judicial review of an arbitration award is very narrowly limited, a court should not attempt to enforce an award that is ambiguous or indefinite"); *or* to resolve an ambiguity. *Bell Aerospace Co. Division of Textron, Inc.* v. *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW)*, 500 F.2d 921, 924 (2d Cir. 1974) ("[c]onstruing ambiguous provisions of an arbitration award is the proper province of the arbitrator, not the courts"). Either action "would serve only to undermine the authority of arbitrators, and to entangle the courts in disputes which the parties originally had agreed to settle privately." *New York Bus Tours, Inc.* v. *Kheel*, 864 F.2d 9, 13 (2d Cir. 1988); see also *U.S. Energy Corp.* v. *Nukem, Inc.*, 400 F.3d 822, 831 (10th Cir. 2005); *Teamsters Local 312* v. *Matlack, Inc.*, supra, 118 F.3d 994.

When faced with an ambiguous award, a court usually will remand to the arbitrator for clarification. See, e.g., *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 486. In this instance, however, remand would be a pointless gesture because the arbitrator already had issued a sufficient clarification prior to the filing of the motion to confirm. See, e.g., *Iron Workers Local No. 272* v.

*Bowen,* 624 F.2d 1255, 1264 (5th Cir. 1980), on appeal after remand, 695 F.2d 531 (11th Cir. 1983). The arbitrator, in a letter dated December 3, 2003, restated his original award in a way that clarified its terms for the parties. Because that clarification resolved any potential ambiguity in the award, the court was obligated to confirm the award as clarified by the arbitrator.

The judgment is affirmed.

In this opinion the other judges concurred.