******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STARBOARD RESOURCES, INC. *v.* CHARLES HENRY III ET AL.
## (AC 41922)

Lavine, Prescott and Moll, Js.

*Syllabus*

The plaintiff sought an interlocutory judgment of interpleader to determine the rights of the defendants, certain individuals and companies (Group I defendants, Group H defendants and Group S defendants), to certain shares of the plaintiff's common stock. The Group H defendants had commenced two actions, which were consolidated with the interpleader action, against the Group I defendants and the plaintiff, claiming, inter alia, fraud and breach of fiduciary duty, and seeking injunctive relief and monetary damages in connection with the investment by the Group H defendants in three limited liability partnerships. Thereafter, the Group H defendants' actions were referred to an arbitrator, who issued an award in favor of the Group H defendants, which the trial court confirmed. Subsequently, in the interpleader action, the Group H defendants filed a motion for an interlocutory judgment of interpleader, asserting that, pursuant to the arbitration award, they were the rightful owners of the disputed shares of stock. The Group H defendants also filed a motion to remand in which they requested that, if the trial court found that the arbitration award was ambiguous as to the ownership of the shares, the court remand the matter to the arbitrator for clarification regarding that issue. The defendant G Co. thereafter file a motion to dismiss the interpleader action on the ground that it was moot. Following a hearing, the trial court denied G Co.'s motion to dismiss, granted the Group H defendants' motions to remand and for an interlocutory judgment of interpleader, and rendered judgment thereon. On the Group I defendants' appeal to this court, *held*:

1. The Group I defendants' claim that the trial court lacked subject matter jurisdiction over the interpleader action on the ground that the plaintiff lacked standing because its transfer agent, who was not a party to the action, allegedly was holding the subject shares on behalf of the plaintiff was unavailing; there was no appellate authority that supported the proposition that an interpleader action is jurisdictionally defective if the property at issue is held by a nonparty transfer agent of a named party.

2. The Group I defendants' could not prevail on their claims that the trial court improperly denied G Co.'s motion to dismiss and improperly rendered the interlocutory judgment of interpleader; although the Group I defendants asserted that the interpleader action was moot because the Group S defendants did not have a viable adverse claim to the subject shares, it was premature, at the current stage of the proceedings, for this court to consider the merits of any of the parties' purportedly adverse claims to the shares.

3. The trial court properly granted the Group H defendants' motion to remand the matter to the arbitrator: contrary to the Group I defendants' claim that by remanding the matter to the arbitrator, that court improperly opened and vacated the arbitration award, the court properly exercised its authority to remand the matter to the arbitrator to clarify the arbitration award as to the ownership of the subject shares; moreover, the court did not violate the doctrine of functus officio, as the varying positions of the Group I defendants and Group S defendants regarding whether the arbitrator had determined the ownership of the shares demonstrated that the arbitration award was susceptible to more than one reasonable interpretation.

Argued October 18, 2019—officially released February 25, 2020

*Procedural History*

Action for interpleader to determine the defendants' rights to certain shares of common stock of the plaintiff, and for other relief, brought to the Superior Court in the

judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket, where the court, *Genuario, J.*, granted the motion to stay the proceedings pending arbitration filed by the defendant Gregory Imbruce et al.; thereafter, the court, *Lee, J.*, denied the motion to dismiss filed by the defendant Giddings Investments, LLC, granted the motion to remand the matter to the arbitrator filed by the defendant Charles Henry III et al., granted the motion for an interlocutory judgment of interpleader filed by the defendant Charles Henry III et al. and rendered judgment thereon, from which the defendant Gregory Imbruce et al. appealed to this court. *Affirmed.*

*Richard S. Gora*, with whom, on the brief, was *Nicole O'Neil*, for the appellants (defendant Gregory Imbruce et al.).

*David W. Rubin*, with whom, on the brief, was *Jonathan D. Jacobson*, for the appellees (Bradford Higgins et al.).

*Opinion*

MOLL, J. In this interpleader action, the Imbruce parties[1] appeal from the trial court's interlocutory judgment of interpleader. On appeal, the Imbruce parties claim that the trial court (1) does not have subject matter jurisdiction over this interpleader action because the plaintiff, Starboard Resources, Inc., lacks standing, (2) erroneously denied the defendant Giddings Investments, LLC's motion to dismiss this interpleader action as moot, (3) improperly rendered the interlocutory judgment of interpleader, and (4) erroneously granted a motion to remand the matter to the arbitrator who had entered an award in an arbitration involving the Imbruce parties and the SOSventures parties.[2] We affirm the judgment of the trial court.

The following facts, as found by the trial court, *Genuario, J.*, in a memorandum of decision dated April 11, 2016, as set forth by this court in a prior appeal, and/or as undisputed in the record, and procedural history are relevant to our resolution of this appeal. This interpleader action "arise[s] out of the . . . investment [by Charles Henry III, Ahmed Ammar, John P. Vaile, John Paul Otieno, William Mahoney, Giddings Oil & Gas, L.P., Hunton Oil Partners, L.P., ASYM Energy Fund III, L.P., SOSventures, LLC, Bradford Higgins, Edward M. Conrads, and Robert J. Conrads (Henry parties)][3] in three limited partnerships: Giddings Oil & Gas, L.P. (Giddings, L.P.), Hunton Oil Partners, L.P. (Hunton, L.P.), and ASYM Energy Fund III, L.P. (ASYM, L.P.). [The Henry parties] are investors and limited partners in each of these limited partnerships. Each of the limited partnerships had a general partner [that] is a limited liability company: Giddings Genpar, LLC (Giddings Genpar), Hunton Oil Genpar, LLC (Hunton Genpar), and ASYM [Capital] III, LLC (ASYM Genpar), respectively. Each of the limited liability companies that served as a general partner of a limited partnership had a manager; the manager of Giddings Genpar was Giddings Investments, LLC, the manager of Hunton Genpar was Glenrose Holdings, LLC, and the manager of ASYM Genpar was ASYM Energy Investments, LLC." (Footnote added; internal quotation marks omitted.) *Henry* v. *Imbruce*, 178 Conn. App. 820, 823–24, 177 A.3d 1168 (2017).

In July, 2012, the Henry parties commenced two actions,[4] which were later consolidated, against the Imbruce parties and the plaintiff. See *Henry* v. *Imbruce*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket Nos. X08-CV-12-5013927-S and X08-CV-12-6014987-S (Henry actions).[5] "The [Henry parties] in their complaint alleged that . . . Gregory Imbruce . . . exercised complete control over the managers and therefore over the general partners and over the limited partnerships. . . . In their second amended complaint[6] . . . the [Henry parties] alleged various fact patterns pursuant to which

they asserted that the . . . [Imbruce parties had] made misrepresentations in the marketing of the investments, that the . . . [Imbruce parties had] violated the provisions of the Connecticut Uniform Securities Act (CUSA), [General Statutes § 36b-2 et seq.], and that the . . . [Imbruce parties had] wrongfully diverted assets of the various limited partnerships to their own purposes or accounts. The second amended complaint sound[ed] in [eleven] counts [that] [sought] both injunctive relief and monetary damages, alleging counts that sound[ed] in fraud, breach of fiduciary duty, conversion, civil theft, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq., among other theories of relief. The prayer for relief in the second amended complaint [sought] both equitable relief and monetary damages." (Footnote in original; internal quotation marks omitted.) *Henry* v. *Imbruce*, supra, 178 Conn. App. 824.

In August, 2012, pursuant to General Statutes § 52-484,[7] the plaintiff commenced this interpleader action. In its complaint, the plaintiff alleged that a dispute had arisen between the various defendants regarding who was entitled to the ownership of certain common stock shares of the plaintiff (shares). The plaintiff further alleged that it had no beneficial interest in the shares and that it was willing to disburse the shares to whomever lawfully was entitled to receive them. As relief, the plaintiff sought an interlocutory judgment of interpleader, a discharge of its liabilities upon disbursement of the shares, and attorney's fees.

"On July 11, 2014, the court granted [a] motion of the . . . [Imbruce parties] to stay [the Henry actions and this interpleader action] pending completion of arbitration proceedings, some of which had already begun. . . . Consistent with the court order staying [the actions], the parties proceeded to arbitration and by subsequent agreement broadened the arbitration beyond that which they had previously agreed to in their limited partnership agreements. The parties proceeded with the arbitration before a single arbitrator.

"On September 10, 2015, the arbitrator rendered an award in favor of the [Henry parties], who as respondents in the arbitration proceeding had filed a counterclaim, including allegations similar in nature to the allegations of the second amended complaint previously described. The award consisted of declaratory awards, monetary damages, awards of [attorney's] fees, interest, injunctive relief requiring an accounting, postjudgment interest, as well as awards of arbitration fees and costs.

"On September 14, 2015, the [Henry parties] filed a motion in the trial court to confirm the arbitration award. On October 13, 2015, the [Imbruce parties] filed an objection to the [Henry parties'] motion to confirm the award and a cross motion to vacate the award accompanied by scores of exhibits. A flurry of proce-

dural and substantive filings followed, until, on February 8, 2016, the court held a hearing on the parties' respective motions. The court, after further briefing, rendered judgments in accordance with the arbitrator's decision on April 11, 2016, confirming the arbitral award." (Footnote omitted; internal quotation marks omitted.) Id., 825–26. The Imbruce parties appealed from the judgments confirming the arbitration award, which this court affirmed on December 26, 2017. Id., 844.

On November 29, 2017, in this interpleader action, the Henry parties filed a motion for an interlocutory judgment of interpleader. Predicated on their belief that, pursuant to the arbitration award, they were the rightful owners of the shares, the Henry parties sought, inter alia, an interlocutory judgment of interpleader and an order granting a separate motion filed by the Henry parties for leave to effect a sale of the shares. The same day, the Henry parties filed a separate motion requesting that, in the event that the trial court construed the arbitration award to be ambiguous as to the ownership of the shares, the court remand the matter to the arbitrator for clarification regarding the ownership of the shares (motion to remand). The Imbruce parties objected to both motions.

On December 29, 2017, Giddings Investments, LLC, filed a motion to dismiss this interpleader action[8] on the ground that it had become moot because, in its view, the arbitrator had denied the Henry parties' claim to the ownership of the shares and, therefore, no adverse claim to the shares existed. The Henry parties objected to the motion.

On July 24, 2018, after having heard argument from the parties on July 20, 2018, the trial court, *Lee, J.*, issued orders (1) denying Giddings Investments, LLC's motion to dismiss, (2) granting the Henry parties' motion for an interlocutory judgment of interpleader, and (3) granting the Henry parties' motion to remand. This appeal followed.[9] Additional facts and procedural history will be set forth as necessary.[10]

I

We first address the Imbruce parties' claim that the trial court lacks subject matter jurisdiction to entertain this interpleader action because the plaintiff lacks standing. More specifically, the Imbruce parties assert that the plaintiff's transfer agent,[11] a nonparty, is in possession of the shares, thereby depriving the plaintiff of standing to maintain this interpleader action. We are not persuaded.

As a preliminary matter, we note that the Imbruce parties are raising this standing claim for the first time on appeal. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . [A] claim that a court lacks subject

matter jurisdiction may be raised at any time during the proceedings . . . including on appeal . . . . Because the . . . claim implicates the trial court's subject matter jurisdiction, we conclude that it is reviewable even though [it has been] raised . . . for the first time on appeal. . . . The issue of whether a party had standing raises a question of law over which we exercise plenary review. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Citations omitted; internal quotation marks omitted.) *Premier Capital, LLC* v. *Shaw*, 189 Conn. App. 1, 5–6, 206 A.3d 237 (2019).

The following additional facts and procedural history are relevant to our resolution of this claim. In its interpleader complaint, the plaintiff alleged in relevant part that, "[o]n behalf of [the] plaintiff, the plaintiff's transfer agent is holding the [shares] in book entry form . . . . The plaintiff has and claims no beneficial interest in the [shares], and is willing to disburse the same over to such person as is lawfully entitled to receive the same, and [the] plaintiff is ready, willing and able to pay or instruct its transfer agent to book the [shares] into the court or to whichever defendant the court may order or direct." During the July 20, 2018 hearing, the Imbruce parties' attorney represented that "there's no dispute that the shares are registered and held in book entry form at [the plaintiff's] transfer agent . . . ."

We reject the Imbruce parties' assertion that the plaintiff lacks standing on the ground that its transfer agent allegedly is holding the shares on the plaintiff's behalf. Section 52-484, pursuant to which the plaintiff commenced this interpleader action, provides in relevant part that "[w]henever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader . . . making all persons parties who claim to be entitled to or interested in such money or other property. . . ." The plaintiff, as the principal of its transfer agent, maintains constructive possession of the shares held by its transfer agent, and there is no indication in the record that the plaintiff does not have the authority to direct its transfer agent to transfer or otherwise to take action with regard to the shares. See *Lee* v. *Duncan*, 88 Conn. App. 319, 324, 870 A.2d 1 ("[a]n essential factor in an agency relationship is the right of the principal to direct

and control the performance of the work by the agent" (internal quotation marks omitted)), cert. denied, 274 Conn. 902, 876 A.2d 12 (2005). The Imbruce parties have provided no appellate authority, and we are aware of none, supporting the proposition that an interpleader action is jurisdictionally defective if the property at issue is held by a nonparty transfer agent of a named party. Accordingly, the Imbruce parties' standing claim is unavailing.[12]

## II

We next address the Imbruce parties' intertwined claims that the trial court improperly (1) denied Giddings Investments, LLC's motion to dismiss this interpleader action as moot and (2) rendered the interlocutory judgment of interpleader. Specifically, the Imbruce parties assert that the arbitrator denied a request for ownership of the shares made by the SOSventures parties and the other Henry parties, and, as a result, the SOSventures parties do not have a viable adverse claim to the shares. Without such a viable adverse claim, the Imbruce parties posit, this interpleader action is moot and the court erred in rendering the interlocutory judgment of interpleader. We conclude that the court did not err in denying the motion to dismiss and rendering the interlocutory judgment of interpleader.

At the outset, we observe that we exercise plenary review over claims challenging a court's decision on a motion to dismiss and an interlocutory judgment of interpleader. See *Gold* v. *Rowland*, 296 Conn. 186, 200, 994 A.2d 106 (2010) ("The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.));[13] *Trikona Advisers Ltd.* v. *Haida Investments Ltd.*, 318 Conn. 476, 490, 122 A.3d 242 (2015) ("the appropriate standard of review for an interlocutory judgment of interpleader is de novo").

The crux of the Imbruce parties' claims is that the SOSventures parties do not have a viable adverse claim to the shares. It is premature, however, for us to consider the merits of any of the parties' purportedly adverse claims to the shares. As our Supreme Court has explained, "[a]ctions pursuant to § 52-484 involve two distinct parts . . . . In the first part, the court must determine whether the interpleader plaintiff has alleged facts sufficient to establish that there are adverse claims to the fund or property at issue. . . . If the court considers interpleader to be proper under the circumstances, then the court may render an interlocutory judgment of interpleader. . . . Only once an interlocutory judgment of interpleader has been rendered may the court hold a trial on the merits, compelling the

parties to litigate their respective claims to the disputed property." (Citations omitted; internal quotation marks omitted.) *Trikona Advisors Ltd.* v. *Haida Investments Ltd.*, supra, 318 Conn. 483–84; see also Practice Book § 23-44.[14]

Here, the Imbruce parties do not claim on appeal that the plaintiff failed to allege adequate facts in its interpleader complaint demonstrating that there are facially competing claims to the shares; rather, they contend that the SOSventures parties are without a *viable* adverse claim to the shares. Therefore, at this juncture, it is premature to consider the merits of the parties' purportedly adverse claims to the shares. "It [is] not the role of the trial court, nor is it the function of this court on appeal, to consider the merits of the purportedly competing claims at this preliminary stage of the . . . interpleader action." *Trikona Advisors Ltd.* v. *Haida Investments Ltd.*, supra, 318 Conn. 493. Accordingly, the Imbruce parties' claims that the court erred in denying Giddings Investments, LLC's motion to dismiss this interpleader action[15] and in rendering the interlocutory judgment of interpleader fail.

### III

Finally, we turn to the Imbruce parties' claim that the trial court erroneously granted the Henry parties' motion to remand. Specifically, the Imbruce parties assert that, by remanding the matter to the arbitrator, the court (1) improperly opened and vacated the arbitration award and (2) violated the doctrine of functus officio[16] because the arbitrator unambiguously had determined that the Henry parties were not entitled to ownership of the shares and, therefore, the remand order, in effect, required the arbitrator to redetermine an issue that already had been decided. We are not persuaded.

We begin by setting forth the applicable standard of review. The Imbruce parties' claim requires us to interpret (1) the trial court's order granting the motion to remand and (2) the arbitration award. Therefore, our review is plenary. See *In re Jacklyn H.*, 162 Conn. App. 811, 830, 131 A.3d 784 (2016) ("[t]he construction of an order is a question of law for the court, and the court's review is plenary"); *Windham* v. *Doctor's Associates, Inc.*, 161 Conn. App. 348, 356, 127 A.3d 1082 (2015) ("The standard of review applied to the construction of an arbitration award is the same as that applied to the construction of a judgment. . . . The construction of an arbitration award, therefore, is a question of law subject to plenary review." (Internal quotation marks omitted.)).

The following additional facts and procedural history are relevant to our disposition of this claim. In the arbitration award, the arbitrator entered an award in favor of the Henry parties (as the respondents/counter-

claim claimants) and against the Imbruce parties (as the claimants/counterclaim respondents). The award included, inter alia, declaratory relief and monetary damages. The final paragraph of the award provided: "This award is in full settlement of all claims and counterclaims submitted to this [a]rbitration. All claims not expressly granted herein are hereby denied." The award made no explicit mention of the shares, notwithstanding that, in the damages analysis filed by the Henry parties in the arbitration setting forth their claimed damages and set-offs in relation to their counterclaim, certain Henry parties sought "[100] percent . . . of the shares . . . ." In its memorandum of decision confirming the arbitration award, the trial court, *Genuario, J.*, made reference to this interpleader action but did not otherwise discuss the ownership of the shares.

In the motion to remand, the Henry parties reiterated their position that the arbitrator had determined that they were the rightful owners of the shares. In the event that the court concluded that the arbitration award was ambiguous as to the ownership of the shares, however, the Henry parties requested that the court remand the matter to the arbitrator to clarify the arbitration award's effect on the ownership of the shares. In the July 24, 2018 order granting the motion to remand, the court, *Lee, J.*, stated that it was remanding the matter to the arbitrator "for further proceedings to determine the ownership of the [shares] . . . ." Subsequently, in the December 21, 2018 order issued in response to the Imbruce parties' Practice Book § 64-1 (b) notice, the court further stated that its decision granting the motion to remand "reflected the consensus of the parties and the court that the [a]rbitrator was in the best position to clarify her award as to the . . . shares" and that the order was "simply remanding an issue to the [a]rbitrator for clarification of her [a]ward."

In *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 484–85, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005), our Supreme Court explained: "[A]s a general rule, once an arbitration panel renders a decision regarding the issues submitted, it becomes functus officio and lacks any power to reexamine that decision. . . . Courts also have recognized, however, that the doctrine has limitations and contains three exceptions that allow an arbitrator's review of a final award. . . . The three exceptions to the rule of functus officio include: (1) [where] an arbitrator can correct a mistake which is apparent on the face of his [or her] award . . . such as clerical mistakes or obvious errors in arithmetic computation; . . . (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his [or her] function and it remains open to him [or her] for subsequent determination; and (3) [w]here the award, although seemingly

complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."[17] (Citations omitted; footnotes omitted; internal quotation marks omitted.)

"In examining arbitration awards, courts have noted that an award is ambiguous if it is susceptible to more than one interpretation." (Internal quotation marks omitted.) *All Seasons Services, Inc.* v. *Guildner*, 94 Conn. App. 1, 10, 891 A.2d 97 (2006). "When faced with an ambiguous award, a court usually will remand to the arbitrator for clarification." Id., 13; see also *Marulli* v. *Wood Frame Construction Co.*, *LLC*, 124 Conn. App. 505, 517, 5 A.3d 957 (2010) (noting that trial court "had the discretion to remand for clarification to the arbitrator" if court was unclear as to whether arbitrator had adequately addressed arbitration issue), cert. denied, 300 Conn. 912, 13 A.3d 1102 (2011). "[W]hen a court remands an arbitration award for clarification, the resolution of such an ambiguity is not within the policy which forbids an arbitrator to redetermine an issue which he [or she] has already decided, for there is no opportunity for redetermination on the merits of what has already been decided. . . . On remand, the arbitrator is limited in his [or her] review to the specific matter remanded for clarification and may not rehear and redetermine those matters not in question." (Citation omitted; internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 486.

We discern no error in the court's granting of the motion to remand. A trial court may "remand without vacating a case to an arbitrator for clarification of a final award . . . ." Id., 485. Thus, contrary to the Imbruce parties' assertion, the court did not open and vacate the arbitration award; rather, it exercised its authority to remand the matter to the arbitrator to clarify the arbitration award as to the ownership of the shares.

Additionally, the court did not violate the doctrine of functus officio. Ownership of the shares was an issue raised during the arbitration. The arbitrator did not discuss the ownership of the shares in the arbitration award; nevertheless, the Imbruce parties and the SOSventures parties maintain that the arbitrator implicitly determined the ownership of the shares in their respective favors. Specifically, the Imbruce parties argue that, during the arbitration, the Henry parties expressly requested that the arbitrator award them ownership of the shares and that the arbitrator, by not explicitly awarding them the same and by stating that "[a]ll claims not expressly granted [in the arbitration award] are hereby denied," necessarily denied the Henry parties' request for ownership of the shares. Conversely, the SOSventures parties argue that the arbitrator ruled against the Imbruce parties and in favor of the Henry

parties with respect to all of their respective claims in the arbitration, including the Henry parties' claim sounding in civil theft, such that the arbitrator implicitly awarded the Henry parties ownership of the shares. We conclude that these positions demonstrate that the award is susceptible to more than one reasonable interpretation. Accordingly, the court acted properly in remanding the matter to the arbitrator to clarify her award with respect to the ownership of the shares.[18]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The following defendants filed this appeal: Gregory Imbruce; Giddings Investments, LLC; Giddings Genpar, LLC; Hunton Oil Genpar, LLC; ASYM Capital III, LLC; Glenrose Holdings, LLC; and ASYM Energy Investments, LLC (Imbruce parties). All other parties in the trial court at the time of the decisions from which this appeal was taken are therefore deemed appellees. See Practice Book § 60-4. Of that group, the following defendants filed a joint appellees' brief: SOSventures, LLC; Bradford Higgins; Edward M. Conrads; and Robert J. Conrads (SOSventures parties). The remaining appellees, who are not participating in this appeal, include the sole plaintiff, Starboard Resources, Inc., and the following defendants: Charles Henry III; Ahmed Ammar; John P. Vaile; John Paul Otieno; William Mahoney; William F. Pettinati, Jr.; Giddings Oil & Gas, L.P.; Hunton Oil Partners, L.P.; ASYM Energy Fund III, L.P.; Nicholas P. Garofolo; Sigma Gas Barbastella Fund; and Sigma Gas Antrozous Fund.

[2] For ease of discussion, we address the Imbruce parties' claims in a different order than they are set forth in the Imbruce parties' principal appellate brief.

[3] The SOSventures parties are comprised of a portion of the Henry parties.

[4] William F. Pettinati, Jr., a defendant in this interpleader action, initially was a plaintiff in the Henry actions, but he subsequently withdrew his claims therein.

[5] In *Henry* v. *Imbruce*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-12-5013927-S, the Henry parties filed, inter alia, an application for a prejudgment remedy. Thereafter, the Henry parties mistakenly commenced a second action— *Henry* v. *Imbruce*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-12-6014987-S. The Henry parties filed a motion to consolidate the two actions, which was granted.

[6] "The [Henry parties] filed their second amended complaint on July 31, 2012, and a third amended complaint by consent on June 6, 2013. These pleadings, however, [were] superseded for the purposes of [the prior appeal] by the [Henry parties'] counterclaims as respondents in the arbitration." *Henry* v. *Imbruce*, supra, 178 Conn. App. 824 n.4.

[7] General Statutes § 52-484 provides: "Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property. Such court shall hear and determine all questions which may arise in the case, may tax costs at its discretion and, under the rules applicable to an action of interpleader, may allow to one or more of the parties a reasonable sum or sums for counsel fees and disbursements, payable out of such fund or property; but no such allowance shall be made unless it has been claimed by the party in his complaint or answer."

[8] Giddings Investments, LLC, is identified in the motion to dismiss as the sole movant. On appeal, the Imbruce parties, who are all represented by the same attorney, indicate that they collectively filed the motion to dismiss. We will refer to the motion to dismiss as having been filed by Giddings Investments, LLC.

[9] On September 20, 2018, a number of the Henry parties filed a motion to dismiss this appeal for lack of a final judgment. On October 31, 2018, the SOSventures parties filed a separate motion to dismiss this appeal for lack of a final judgment. On December 5, 2018, this court denied both motions to dismiss.

[10] On August 24, 2018, the Imbruce parties filed a notice pursuant to Practice Book § 64-1 (b) asserting that the trial court had not filed a memorandum of decision with respect to its decisions denying Giddings Investments, LLC's motion to dismiss, granting the Henry parties' motion for an interlocutory judgment of interpleader, and granting the Henry parties' motion to remand. By way of an order dated December 21, 2018, the trial court, inter alia, determined that its orders adequately set forth the reasons underlying its rulings; nevertheless, in the December 21, 2018 order, the court further expounded on its decisions.

[11] A transfer agent is "[a]n organization (such as a bank or trust company) that handles transfers of shares for a publicly held corporation by issuing new certificates and overseeing the cancellation of old ones and that usually also maintains the record of shareholders for the corporation and mails dividend checks. Generally, a transfer agent ensures that certificates submitted for transfer are properly indorsed and that the right to transfer is appropriately documented." Black's Law Dictionary (11th Ed. 2019) p. 81.

[12] The Imbruce parties also note that the plaintiff claims no interest in the shares. As a disinterested possessor of the shares, the plaintiff has standing to maintain this interpleader action. See *Millman* v. *Paige*, 55 Conn. App. 238, 242–43, 738 A.2d 737 (1999) (noting that "[t]he classic interpleader action existing in equity, prior to the enactment of the statute, was brought by a disinterested stakeholder to establish the undivided ownership of money or property claimed by two or more entities or individuals" but that "[a]fter the passage of the forerunner to § 52-484 in 1893, the rule that an interpleader action be maintained only by a stakeholder with no interest in the disposition of the fund was relaxed").

[13] Additionally, "[o]ur review of the question of mootness is plenary." *Wozniak* v. *Colchester*, 193 Conn. App. 842, 852, 220 A.3d 132, cert. denied, 334 Conn. 906, 220 A.3d 37 (2019).

[14] Practice Book § 23-44 provides: "No trial on the merits of an interpleader action shall be had until (1) an interlocutory judgment of interpleader shall have been entered; and (2) all defendants shall have filed statements of claim, been defaulted or filed waivers. Issues shall be closed on the claims as in other cases."

[15] Following the rendering of an interlocutory judgment of interpleader in an interpleader action, we perceive no bar to a party moving to dispose of the action on the ground that no viable adverse claims to the property at issue exist. It is improper, however, to raise that issue before an interlocutory judgment of interpleader has been rendered.

[16] " 'Functus officio' has been defined as 'having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force of authority.' . . . As one court has observed: 'The policy which lies behind this [doctrine] is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he [or she] has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.' " (Citation omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 271 Conn. 474, 484 n.9, 857 A.2d 893 (2004), cert. denied, 544 U.S. 974, 125 S. Ct. 1826, 161 L. Ed. 2d 723 (2005).

[17] In *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, supra, 271 Conn. 478, 480, our Supreme Court analyzed a trial court's order remanding a case to an arbitration panel for a rehearing to clarify an arbitration award. Our Supreme Court applied the Federal Arbitration Act (arbitration act), 9 U.S.C. § 1 et seq., and examined federal case law discussing the functus officio doctrine to conclude that the trial court had the legal authority to remand, without vacating, the arbitration award. Id., 482–93. In concluding that the arbitration act applied, our Supreme Court explained: "The United States Supreme Court expressly has held that Congress 'intended [the arbitration act] to apply in state and federal courts,' pursuant to the exercise of its commerce clause powers. *Southland Corp.* v. *Keating*, 465 U.S. 1, 15, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984); accord *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 271–72, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Hottle* v. *BDO Seidman, LLP*, 268 Conn. 694, 702, 846 A.2d 862 (2004) (discussing applicability of arbitration act to states as set forth in United States Supreme Court precedent). Thus, where parties have entered into 'a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction'; 9 U.S.C. § 2; the arbitration act applies." *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at*

*Lloyd's & Cos. Collective*, supra, 483. Our Supreme Court proceeded to determine that "the contract between the parties, which authorizes the parties to institute arbitration proceedings in the event of a dispute, arises from a transaction involving commerce." Id.

In the prior appeal involving the Imbruce parties and the SOSventures parties, this court stated that the trial court had found, and the parties had agreed, that the arbitration act applied "because the underlying contracts involve interstate commerce." *Henry* v. *Imbruce*, supra, 178 Conn. App. 826. More specifically, this court observed that the matter involved "speculators in California, Connecticut, Illinois and Texas [who had] invested capital in Delaware companies (headquartered in Connecticut and Texas) that exploit mineral rights in Texas and Oklahoma." Id., 826 n.6. In light of the foregoing, we conclude that the arbitration act applies insofar as the Imbruce parties claim that the trial court improperly granted the Henry parties' motion to remand and, therefore, we rely on the legal principles set forth in *Hartford Steam Boiler Inspection & Ins. Co.* in resolving this claim.

[18] We note that in the July 24, 2018 order granting the motion to remand, the trial court stated that it was remanding the matter to the arbitrator "to *determine* the ownership of the [shares] . . . ." (Emphasis added.) In the subsequent December 21, 2018 order, however, the court stated that the arbitrator "was in the best position to *clarify* her award as to the [shares]" and that the July 24, 2018 order "was simply remanding an issue to the [a]rbitrator for *clarification* of her [a]ward." (Emphasis added.) We construe these orders to mean that the court remanded the matter to the arbitrator to clarify the arbitration award with regard to the ownership of the shares, not to decide an unresolved claim or to reconsider a claim that already had been adjudicated.

———————————————